4156                                     139 S. W. 2d 409

Opinion delivered April 29, 1940.

*Royce Weisenberger,* for appellant.

*Jack Holt,* Attorney General and *Jno. P. Streepey,* Asst. Atty. General, for appellee.

SMITH, J.   Bill Shirley and appellant Laney Davidson gambled at a game played with dice, called "craps," and Shirley won Davidson's money. Before beginning the game, Shirley cashed a check for $5 at a filling station, and Davidson won this money from him. He then

gave Davidson a check for $5, which he also lost. He then gave Davidson another check for $15, with which he won back his checks and apparently all the money Davidson had, the amount of which is uncertain from the testimoney. At the conclusion of the game one Robbins came in with a check for $50 which had been given him by Shirley, and which had been dishonored when presented for payment. Robbins had won the amount of this check from Shirley in a previous game of craps. Davidson then protested that Shirley had won his money by issuing worthless checks. The check issued to Robbins was drawn on a bank in the city of Hope. The ones given Davidson had been drawn on a bank in Nashville, which Shirley insisted would have been paid on presentation, and to prove this he and Davidson started to Nashville in a car owned and driven by one Boyce. The three men all rode on the same seat, Shirley being in the middle. Before reaching Nashville, Davidson ordered Boyce to stop the car, and he commanded Shirley to return his money, saying, "By God, I will have it or kill you." Shirley protested that he had won the money fairly, and refused to deliver it, when Davidson pulled Shirley out of the car with such violence that he broke one of Shirley's ribs in doing so. Shirley was wearing a pair of overalls, in a pocket of which he had the money. Davidson tore the overalls off of Shirley and took possession of the money.

Davidson was indicted, tried and convicted upon a charge of robbery, and has prosecuted this appeal from that sentence.

Shirley testified that Davidson took from him more money than he had won from Davidson; but this was denied by Davidson.

The trial court refused to give an instruction numbered 1, requested by Davidson, reading as follows: "You are instructed that the laws of Arkansas give a person who loses money shooting dice the right to recover the same by an action against the person winning from him, and even though the law does not sanction the re-taking of gambling losses by force, yet if you find that Laney

Davidson only took from the prosecuting witness property that the prosecuting witness had won from him gambling at any time within ninety days from the taking, your verdict will be for the defendant.''

We think the refusal to give this instruction was error. The question whether it is robbery for one who had lost money gambling to retake it by force or by putting the winner in fear is the subject of the annotator's note to the case of *State* v. *Price,* 38 Idaho 149, 219 Pac. 1049, 35 A. L. R. 1458. At page 1462 the annotator says: ''By the weight of authority it is not robbery for one who has lost money in gambling to compel by force or threats the return of the money lost. In view of statutes which give to the loser the right to recover his losses, the retaking thereof by force is deemed to be without felonious intent,'' citing cases which support the text quoted.

The annotator gives Texas as being the only state having a contrary rule, it being stated that in Texas the rule is that where money lost in gambling passes into the possession of the winner, he, the winner, is, in law, the owner thereof, and that it is robbery if the loser thereafter takes the money from the winner by force or by putting the winner in fear. Texas cases to that effect are there cited, but in a later case (*Fisher* v. *State,* 102 Tex. Crim. Rep. 229, 277 S. W. 386) it was held by the Court of Criminal Appeals of that state that ''One deprived of his money by the use of marked cards in a card game is not guilty of robbery in forcibly retaking the money.''

However, the majority rule appears to be, and especially in states having statutes like § 6112, Pope's Digest, of this state, that the right to retake by force, or by putting in fear, money lost in gambling is not restricted to cases where the money was lost through cheating on the part of the winner, as appears to be the law in Texas.

Section 6112, Pope's Digest, reads as follows: ''Any person who shall lose any money or property at any game or gambling device, or any bet or wager whatever, may recover the same by action against the person win-

ning the same; but such suit shall be instituted within ninety days after the paying over of the money or property so lost."

This statute was construed in the case of *Lane* v. *Alexander,* 168 Ark. 700, 271 S. W. 710. See, also, *Williams* v. *Kagy,* 176 Ark. 484, 3 S. W. 2d 332.

The facts in the case of *Lane* v. *Alexander, supra,* were that Lane had possession of $20,100 in United States Government bonds, which Lane claimed he had won from Alexander at the gaming table. Alexander brought suit to recover possession of the bonds, and along with the order of delivery had a capias clause issued for the arrest of Lane upon the averment and affidavit that Lane had disposed of the bonds with the intent to defeat Alexander's right to recover them.

The right of Alexander to maintain replevin to recover possession of the bonds was upheld under the statute quoted above (§ 6112, Pope's Digest), as was also the power of the circuit court to imprison a defendant, in a replevin suit, who refuses to deliver property of plaintiff wrongfully in his possession so long as the contumacy of the defendant persists.

Now, replevin is a possessory action, and it is essential to its maintenance that the plaintiff should have the right to the present possession of the property sought to be recovered. The theory of the Alexander case was that one losing money or property gambling does not lose his title thereto, until ninety days after it was won from him, and during these ninety days the owner may recover, not merely a judgment for the value of the money or property, but may, at any time within that period, recover the identical money or property, and, if necessary, he may, during that period, maintain replevin as an owner entitled to present possession.

Davidson sought to recover possession of the money which he had lost gambling immediately, on the very day during which he had lost it, and if he attempted, at that time or within ninety days thereafter, to recover only the money which he had lost, he was not guilty of robbery, although he accomplished his purpose by force, or

by putting Shirley in fear. Now, he had no right to assault Shirley to accomplish that purpose, and if he did assault him, although it was for the purpose of recovering his money, he would be guilty of assault, but not of robbery.

At § 18 of the chapter on Robbery in 54 C. J., p. 1014, it is said that "It is generally held that the loser in a game of chance may forcibly retake his lost property or money without being guilty of robbery, although some authorities make a distinction between fairly conducted and unfairly conducted games, holding that one who loses fairly is guilty of robbery in retaking his losses by force but is not guilty of robbery in retaking that of which he has been cheated."

The cases cited in the note to the text just quoted sustaining an exception to what is said to be the general rule were Texas cases.

In the case of *Rugless* v. *State*, 97 Ark. 152, 133 S. W. 600, the headnote reads as follows: "A conviction of robbery will not be sustained by evidence that the taking was accompanied by putting the owner in fear, but that the taking was in the presence of others under claim of title." It was so held in this Rugless case upon the authority of the case of *Brown* v. *State*, 28 Ark. 126, in which the facts were as follows. Brown took from the possession of Frank two bales of cotton the title to which he claimed just as Frank was about to have them loaded on a steamboat for shipment. He did this by brandishing his pistol and declaring that he would shoot any one who touched the cotton. In reversing a judgment finding Brown guilty of robbery, the court said that, while Brown's conduct in taking possession of the cotton by force was a violation of the law, it did not constitute the crime of robbery, inasmuch as he had taken possession of the cotton under a claim of title.

Here, Davidson, not only had a claim of title, but he had the title to the money won from him by gambling, a title sufficient, as was held in *Lane* v. *Alexander, supra*, to have supported an action in replevin, and it was not, therefore, robbery to have retaken possession of his own

money by force or by putting in fear, although he had lost possession thereof by gaming.

There is a controversy in this case as to the amount of money won by Shirley, and as to the amount taken from him by Davidson. If Davidson intended to take only the money he had lost gambling, and took no more, then he was not guilty of robbery; but he could not, under the pretext of taking the money he had lost, take additional money. So that, if it was Davidson's intention to take all the money Shirley had, including money which Shirley had not won from him, and if he did take additional money, then he was guilty of robbery, although a part of the money taken had been won from him. Such is the effect of the holding of the Supreme Court of Georgia in the case of *Gant* v. *State,* 115 Ga. 205, 41 S. E. 698, in which case a headnote reads as follows: "2. In the trial of one accused of robbery, it is not error to charge that if two persons play and bet at cards, and the loser wrongfully, fraudulently, and by force and violence compels the winner to surrender to the loser the money won, this is not robbery, but that if the winner is at the same time and in the same manner compelled to surrender not only his winnings, but also some of his individual money, then the loser would be guilty of robbery."

For the error in refusing to give instruction numbered 1, herein copied, the judgment will be reversed and the cause will be remanded, with directions to submit the questions of fact in this case in accordance with the law as herein declared.