Clay Anthony FORD *v.* STATE of Arkansas

CR 98-98                                976 S.W.2d 915

Supreme Court of Arkansas
Opinion delivered October 1, 1998

[Petition for rehearing denied October 29, 1998.]

*Brian Ratcliff; Mays, Byrd & Hicks,* by: *Rickey Hicks;* and *Timothy O. Dudley,* for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Clay Anthony Ford was convicted of capital murder and sentenced to death for having killed Sergeant Glen Bailey, an Arkansas State Policeman. We affirmed the conviction and sentence. *Ford v. State*, 276 Ark. 98, 633 S.W.2d 3 (1982). We denied a stay of execution, *Ford v. State*, 278 Ark. 106, 644 S.W.2d 252 (1982), but the execution was stayed by a federal court after Mr. Ford began proceedings there. Ultimately, a writ of *habeas corpus* was granted, and Mr. Ford's conviction and sentence were vacated. *Ford v. Lockhart*, 861 F.2d 1447 (E.D. Ark. 1994). That decision was affirmed by the United States Court of Appeals for the Eighth Circuit. *Ford v. Norris*, 67 F.3d 162 (8th Cir. 1995).

The State retried Mr. Ford on the capital murder charge in July 1997. He was convicted of first-degree murder and sentenced to life in prison. Mr. Ford again appeals, contending that the Trial Court erred by refusing to admit testimony about brutal mistreatment Mr. Ford suffered as a child at the hands of his father. We hold there was no abuse of the Trial Court's discretion and thus affirm the conviction.

In September 1980, Mr. Ford was observed driving in excess of 100 miles per hour on Interstate 55 in a car later determined to have been stolen. He slowed to take an exit ramp, and a State Police car pulled in front of him to block his way. Mr. Ford shifted into reverse and rammed a second State Police car behind him that was driven by Sergeant Bailey. Mr. Ford got out of the car he had been driving. He was holding a firearm. While he was in a crouched position beside the car, he turned and saw Sergeant Bailey coming toward him with arms outstretched as if ready to "jump" him. Mr. Ford shot and killed Sergeant Bailey.

Mr. Ford admitted in his testimony that he shot Sergeant Bailey. He did not plead not guilty by reason of mental disease or defect, but he argued that he acted impulsively and instinctively without premeditation or deliberation. At the time of the offense, Ark. Stat. Ann. § 41-1501 (Repl. 1977) provided, in relevant part:

(1) A person commits capital murder if:

\*\*\*

(b) with the premeditated and deliberated purpose of causing the death of any law enforcement officer . . . when such person is acting in the line of duty, he causes the death of any person; . . . .

Arkansas Stat. Ann. § 41-1502 (Repl. 1977) provided, in relevant part:

(1) A person commits murder in the first degree if:

\*\*\*

(b) with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person.

\*\*\*

### 1. Child abuse

Mr. Ford's counsel sought to introduce the testimony of Mr. Ford's sister, Katie Cleveland, who is a counseling professional. She was to testify concerning abuse Mr. Ford had suffered as a child from their father. In her proffered testimony she gave her opinion that Mr. Ford, as the result of having been brutally abused as a child, shot Sergeant Bailey impulsively in response to a perceived attack.

The Trial Court ruled that the testimony was inadmissible because it was not relevant, citing Ark. R. Evid. 401 which provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defense counsel stated that, in addition to Ms. Cleveland's testimony, Mr. Ford intended to testify that "the experiences of his childhood influenced what he did at the time of this incident." The Trial Court ruled that testimony inadmissible also.

■ A trial court's rulings on the admissibility of evidence are not overturned absent a showing that the trial court has clearly abused its discretion. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998); *Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997).

In support of the contention that the Trial Court abused its discretion in disallowing the evidence, Mr. Ford cites *Graham v. State*, 290 Ark. 107, 717 S.W.2d 203 (1986), as his principal authority that a lay witness like Ms. Cleveland may render an opinion about the mental state of a defendant.

In the *Graham* case, we held that evidence of the defendant's mental condition, even if it does not show mental disease or defect sufficient to constitute a defense, is relevant on the issue of the culpable mental state. 290 Ark. at 110, 717 S.W.2d at 206, citing *Campbell v. State*, 265 Ark. 77, 576 S.W.2d 938 (1979). Mr. Graham was charged with aggravated robbery. His mother and grandmother proffered testimony that he would "go to pieces" under pressure, but the Trial Court held the evidence inadmissible. On appeal, we pointed out that "purposeful intent" is an essential element of aggravated robbery. It was a fact issue, and according to Ark. R. Evid. 701, a witness may give a non-expert opinion on matters rationally based upon his perception if it helps determine a fact issue. A statute, now codified as Arkansas Code Ann. § 5-2-303 (Repl. 1997), also provided that evidence of mental disease or defect was admissible to prove whether the accused had the kind of mental state required for commission of the offense. From the record, it appeared that Mr. Graham's mother and his grandmother were qualified to express an opinion about his then-current mental condition; thus, we held that it was error to refuse their testimony.

Mr. Ford insists that the primary purpose of Ms. Cleveland's testimony was to show that the abuse suffered by Mr. Ford during his childhood affected his judgment at the time of the shooting. Mr. Ford was born in April 1959. The offense occurred in September 1980 when he was twenty-one years old. Ms. Cleveland's proffered testimony was that Mr. Ford was abused until he was fourteen or fifteen years old, some six or seven years previous to the killing. The testimony in the *Graham* case dealt with the mother's and grandmother's immediate perceptions of Mr. Graham's condition at the time of the crime.

In the case of *Cullum & Boren v. Peacock*, 267 Ark. 479, 592 S.W.2d 442 (1980), the defendant gunshop, Cullum & Boren,

sold a pistol to a Mr. Blodgett, who used it to shoot Mr. Peacock. Mr. Peacock and his spouse recovered substantial damages awards against Cullum & Boren. The Peacocks introduced evidence that Mr. Blodgett had psychiatric treatment some thirteen years prior to the incident. We reversed because the evidence should not have been admitted. One of the grounds upon which we reached that conclusion was that there was no evidence connecting the prior psychiatric treatment with the condition of Mr. Blodgett at the time he purchased the pistol from Cullum & Boren. It was not relevant to the allegation that Cullum & Boren employees had been negligent in their observations of Mr. Blodgett as he purchased the pistol shortly before the crime was committed. It was too remote.

■ Other than his sister's opinion, Mr. Ford offered no evidence that the abuse he suffered at the hands of his father during his childhood was connected with his condition in 1980, when Sergeant Bailey was shot and killed.

■ Deliberation has been defined as "a weighing in the mind of the consequences of a course of conduct, as distinguished from acting upon a sudden impulse without the exercise of reasoning powers." *Davis v. State*, 251 Ark. 771, 773, 475 S.W.2d 155, 156 (1972). Premeditation means to think of beforehand, and it is well established that it is immaterial as to just how long premeditation and deliberation exist, so long as they exist for a period of time prior to the homicide. *Id.* Premeditation and deliberation may occur on the spur of the moment, *Westbrook v. State*, 265 Ark. 736, 747, 580 S.W.2d 702 (1979), and may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds inflicted. *Parker v. State*, 290 Ark. 158, 717 S.W.2d 800 (1986); *Williams v. State*, 289 Ark. 69, 709 S.W.2d 80 (1986).

■ Given the evidence that Mr. Ford was crouched beside the stolen car he had been driving while facing a police officer when he turned and shot and killed another police officer who was about to apprehend him, we cannot say the Trial Court abused his discretion in disallowing the evidence of the abuse of

Mr. Ford that had occurred at a time somewhat remote from the time the crime was committed.

### 2. Rule 4-3(h)

The record in this case has been examined for errors prejudicial to the defendant in accordance with Ark. Sup. Ct. R. 4-3(h), and none has been found.

Affirmed.