Ronald Dee O'NEAL *v.* STATE of Arkansas

CR 03-980 158 S.W.3d 175

Supreme Court of Arkansas
Opinion delivered April 8, 2004

[Rehearing denied May 20, 2004.*]

---

\* BROWN, J., not participating.

676

*Nolan Henry, PLLC*, by: *Mark Murphy Henry*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

J<small>IM</small> H<small>ANNAH</small>, Justice. Ronald Dee O'Neal appeals his conviction for capital murder and sentence of life without parole. O'Neal asserts that he should receive a new trial because the trial court erred in finding that the State presented sufficient evidence to support his conviction, erred in admitting speculative testimony regarding trauma to the victim's genitals, and erred in admitting prejudicial photographs of the victim's decomposed body. We hold there is no reversible error and affirm. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2003).

*Facts*

By O'Neal's own admission, he killed Stacy Ellis on May 13, 2001. Earlier that day, Ellis's mother's best friend Yolanda Austin called Ellis and asked if she wished to move in with her for a while. According to Austin, Ellis told her that she would like to do that, but she would first need to speak with her landlord to see if she could be freed from the obligations of her lease. Again, according to Austin, Ellis was to call her later to arrange for Austin to give her a ride, but Ellis never called.

O'Neal was one of three on-site managers for the apartments where Ellis lived and was one of several people who accepted rent. Ellis's roommate Shameka Yancy testified that on the morning of May 13, 2001, Ellis told her that O'Neal wanted to give her $100. At trial, O'Neal attempted to assert that such a sum might have been the $100 deposit Ellis paid to move into the apartment, but O'Neal stated to investigators that he did not deal with deposits.

Yancy testified further that she left to go to her grandmother's apartment that morning, and that when she left, Ellis was wearing jeans, a black shirt and black house shoes. Yancy further testified that as far as she knew, Ellis never left the apartment in house shoes, and that even if she was just going to Wal-Mart, she would dress up. Yancy stated that she later returned to the apartment that she shared with Ellis, but the door was locked, and Ellis did not answer her knock. Yancy then saw O'Neal and asked him to open the door. O'Neal opened the door for Yancy. When she entered the apartment, she did not find Ellis, but her things were all still there. Shameka testified that she asked O'Neal where Ellis had gone, and he told her Ellis had walked to the park.

Joe Garza of the Pulaski County Sheriff's Department made initial contact with O'Neal regarding Ellis. O'Neal was not a suspect at that time, and Garza was speaking with a number of people who might have last seen her. According to Garza, O'Neal stated that he last saw Ellis leaving the apartment complex laundry room with Yancy and others, and that Ellis was wearing blue jeans or blue jeans shorts. Again, according to Garza, he asked O'Neal if O'Neal told Yancy that he saw Ellis go to the park. According to Garza, O'Neal denied having said that; however, Garza stated that in a later interview on May 20, 2001, O'Neal stated that Ellis told him she was going to the park to meet someone.

On June 19, 2001, O'Neal was again interviewed and confessed to causing Ellis's death. He denied intending to kill her. Instead, O'Neal explained that he was approached by Ellis and asked to return her deposit because she needed the money. O'Neal told police that he informed Ellis he could not do that because he did not handle deposits. O'Neal then further told police that Ellis became irate and began to demand that he give her money under a threat that she would tell O'Neal's girlfriend that O'Neal had propositioned her. O'Neal told the detective that Ellis then turned to leave, and fearing she was going to call his girlfriend and tell her a lie, O'Neal stepped to Ellis and grabbed her. O'Neal then reported that Ellis laid down on the floor, that he sat on her, and

that he tried to talk to her. O'Neal asserted that then Ellis began to demand more money and began to cuss.

O'Neal stated that when he heard someone enter the laundry room nearby, he put his hand over Ellis's mouth to keep the person from overhearing their argument. O'Neal then alleged that he put pressure on Ellis's artery in her throat, what he characterized as a "sleeper hold" he had been taught in the Marines. O'Neal told investigators that he only intended to make her pass out and be quiet. He reported that after she passed out, he put a piece of duct tape over her mouth and answered a couple of phone calls that came in. O'Neal then recounted that a few minutes later he came back to Ellis and discovered that she was not breathing. O'Neal told Garza that he found he had inadvertently placed the duct tape so it not only covered Ellis's mouth but also obstructed her nostrils. According to O'Neal, he tried to get her breathing again but was unable to do so. O'Neal then stated that he panicked, and dumped her body in the river using the trash can, cable, concrete, and other materials.

Dr. Charles Kokes of the Arkansas Medical Examiner's Office testified as a forensic pathologist. According to Dr. Kokes, application of pressure to the carotid arteries for a matter of ten to fifteen seconds would cause a person to pass out, but that it would take several minutes of pressure to kill her. Dr. Kokes also testified that because there was no outward sign of homicidal trauma such as a stab wound, and because the body was discovered tied to a trash can in the river indicating homicide, Dr. Kokes concluded that the cause of death was strangulation. Dr. Kokes testified that Ellis's body had been in the river so long that the typical signs of strangulation such as bruises to the neck and petechical hemorrhages were not present. Dr. Kokes also testified that if duct tape were applied to a person's mouth after application of pressure to the carotid arteries just long enough to cause unconsciousness, the person would revive enough to try to remove the tape.

Dr. Kokes also testified that Ellis's body was retrieved clothed, but that she had signs of antemortem trauma to her labia minora and a tear in the tissue just the left of her labia. However, Dr. Kokes also testified that while not inconsistent with a sexual assault, he could not say with a reasonable degree of medical certainty that the evidence of injury to Ellis's genitals was evidence of a sexual assault. Dr. Kokes did testify that the injury was consistent with blunt force trauma.

## Sufficiency of the Evidence

■■ O'Neal first challenges the sufficiency of the evidence. This court recently discussed sufficiency of the evidence in *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003), where we stated:

> We are mindful of the well-established standard of review in cases challenging the sufficiency of the evidence. This court treats a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Fairchild v. State*, 349 Ark. 147, 76 S.W.3d 884 (2002); *Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.; Wilson v. State*, 332 Ark. 7, 962 S.W.2d 805 (1998). We affirm a conviction if substantial evidence exists to support it. *Carmichael v. State*, 340 Ark. 598, 12 S.W.3d 225 (2000). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Circumstantial evidence may provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Fairchild*, 349 Ark. 147, 76 S.W.3d 884; *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999).

*Edmond*, 351 Ark. at 501-2.

■ We must thus determine if the conviction for capital murder is supported by substantial evidence. O'Neal admits that he caused Ellis's death, so there is no issue of whether O'Neal was the person who caused Ellis's death. However, O'Neal was convicted of causing the death of another person with the premeditated and deliberated purpose of causing the death of that person. As set out in Ark. Code Ann. § 5-10-101, a person commits capital murder where he or she:

> With the premeditated and deliberated purpose of causing the death of another person, he or she causes the death of any person;

Ark. Code Ann. § 5-10-101(a)(4) (2003). We discussed premeditation and deliberation in *Ford v. State*, 334 Ark. 385, 976 S.W.2d 915 (1998):

> Deliberation has been defined as 'weighing in the mind of the consequences of a course of conduct, as distinguished from acting upon a sudden impulse without the exercise of reasoning powers.' *Davis v. State,* 251 Ark. 771, 773, 475 S.W.2d 155, 156 (1972). Premeditation means to think of beforehand, and it is well established that it is immaterial as to just how long premeditation and deliberation exist, so long as they exist for a period of time prior to the homicide. *Id.* Premeditation and deliberation may occur on the spur of the moment, *Westbrook v. State,* 265 Ark. 736, 747, 580 S.W.2d 702 (1979), and may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds inflicted. *Parker v. State,* 290 Ark. 158, 717 S.W.2d 800 (1986); *Williams v. State,* 289 Ark. 69, 709 S.W.2d 80 (1986).

*Ford,* 334 Ark. at 389.

O'Neal denies that he intentionally killed Ellis. According to the story that O'Neal told the detective, he only intended to compel Ellis to be quiet when he applied pressure to her carotid arteries and placed duct tape over her mouth. He asserted that he did not intend that the duct tape would also cover her nostrils. O'Neal told the detective that he tried to resuscitate Ellis and only put her body in a trash can and tried to hide it in the Arkansas River when he panicked.

Dr. Kokes testified that a person could pass out from pressure to the carotid arteries within seconds, but that it would take minutes to cause death. He also testified that if pressure is put on a person's carotid arteries and then removed once the person passes out, as O'Neal said he did, the person would revive and try to remove the duct tape. In short, the story O'Neal told investigators is inconsistent with Dr. Koke's testimony and indicates that Ellis was strangled for several minutes, not the seconds that O'Neal alleged.

■ The evidence provided by O'Neal, combined with Dr. Koke's testimony, constitutes substantial evidence, or in other words, evidence of sufficient force and character that it would, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. An admission to strangling another, and admission to the use of duct tape over the mouth and nose of another, constitutes substantial evidence supporting the jury's conclusion of guilt. O'Neal's own story provides evidence of planning to keep Ellis quiet. At the same time that planning coupled with evidence that Ellis was strangled

long enough to cause death amounts to evidence of premeditation and deliberation. There is evidence that O'Neal weighed what he was about to do and that he engaged in planning prior to the murder. It may have occurred in a moment, but the evidence is there and supports the conviction.

Further, O'Neal admits that he considered how he would deal with his alleged altercation with Ellis, and that he grabbed her and held her against her will to keep her from talking to his girlfriend. Whether keeping Ellis from talking to his girlfriend was truly his motive or not is of no moment. O'Neal admits that he grabbed Ellis and sat on her to force her to do as he wished.

### Antemortem Genital Injury

■ ■ O'Neal challenges the admission of evidence of injury to the victim's labia, including testimony by Dr. Kokes about the condition of the body and a photograph, exhibit 13, showing the injuries. The standard of review on admission of evidence is abuse of discretion. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002). This court has stated of abuse of discretion:

> Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Nazarenko v. CTI Trucking Co., Inc,* 313 Ark. 570, 856 S.W.2d 869 (1993). Here, the court erred, but we cannot say that the trial court's action in admitting a statement for the purpose of impeachment was improvident, thoughtless or without due consideration. We conclude that the trial court's actions do not require reversal as an abuse of its discretion.

*Threadgill v. State*, 347 Ark. 986, 69 S.W.3d 423 (2002).

O'Neal makes two arguments with respect to evidence of injury to Ellis's labia. First, O'Neal argues that the sole issue in this case is whether he killed Ellis with premeditation and deliberation, and that evidence of the vaginal injury casts no light on premeditation or deliberation. O'Neal also alleges that Dr. Kokes's testimony about the injury to the labia was equivocal and that ultimately Dr. Kokes could not testify with a reasonable degree of medical certainty that the injury was the result of sexual assault. O'Neal further argues that Kokes testified that the injury might be the result of decomposition.

Dr. Kokes testified that the discoloration that appeared to be antemortem bruising was in a relatively protected place and also

noted that Ellis's body was recovered with her pants fully on and in place. Dr. Kokes also testified that he did not find any other "areas of discoloration on Ellis's body that were quite like the ones found in the genital region." As noted, Dr. Kokes testified that the discoloration in the genital area was consistent with antemortem bruising. He also testified that all other discoloration he found on Ellis's body was different in color and consistent with decomposition. He did testify that the discoloration could have come from decomposition, but that must be countered by his testimony that the discoloration at the labia was unique on this body and consistent with antemortem trauma. We also note that O'Neal stipulated to Dr. Kokes's qualifications.

■ Further, the evidence of injury to the genital region was relevant on several grounds. It tends at the least to corroborate O'Neal's story that he struggled with Ellis. Dr. Kokes testified that the injury might have been caused by blunt force trauma. The struggle was relevant to the lesser-included offenses involved in jury deliberations and would arguably cast light on whether O'Neal killed Ellis purposely, knowingly under circumstances manifesting extreme indifference to value of human life, recklessly, or negligently. The motive for the slaying given by O'Neal was that he accidently killed Ellis while using a "sleeper hold." Dr. Kokes's testimony directly contradicts this explanation by O'Neal and makes relevant any other evidence showing that O'Neal intentionally or negligently killed Ellis.

■ Additionally, a sexual motive for his detention and assault on Ellis casts light on whether O'Neal intentionally, negligently or accidentally killed Ellis. The evidence of injury to the labia had a tendency to make it less probable that Ellis's death was the result of an accident or mistake and, thus, the evidence was relevant under Ark. R. Evid. 401 (2003). The evidence bears on intent. The evidence was offered to show intent and lack of mistake or accident in the presently charged crime. The evidence is independently relevant proof of O'Neal's intent and the absence of mistake or accident in committing the offense. Hence, the evidence is relevant under the intent and absence-of-mistake-or-accident exception to Ark. R. Evid. 404(b) (2003). *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001).

■■ O'Neal told investigators that he grabbed Ellis to get her to be quiet, and that he specifically stopped Ellis to keep her from telling his girlfriend that he had propositioned Ellis. O'Neal

thus admitted that he used physical force to detain Ellis against her will. O'Neal also acknowledged to police that he knew that Ellis worked as an exotic dancer. He admitted that he had gotten in trouble with his girlfriend for supposedly flirting with girls in the complex, including a request by him that one of the girls put on certain shorts and help him paint an apartment. O'Neal also told investigators that his girlfriend had specifically challenged him about whether he had been down to Ellis's place of employment to watch her dance. The complained of evidence was relevant in that it made it more probable that O'Neal purposely, knowingly, recklessly or negligently killed Ellis. The evidence also makes it more probable that O'Neal did not accidently kill Ellis. This court in *Matthews v. State*, 352 Ark. 166, 99 S.W.3d 403 (2003), stated:

> As part of its case-in-chief, the State sought to demonstrate the appellant's motive and intent for the commission of the offense. The admission of evidence showing motive is a matter left to the discretion of the trial court, which will be reversed only for an abuse of that discretion. *E.g., Martin v. State,* 328 Ark. 420, 944 S.W.2d 512 (1997). In *Howard v. State,* 348 Ark. 471, 79 S.W.3d 273 (2002), we reiterated the long-held rule that where the purpose of evidence is to disclose a motive for killing, anything and everything that might have influenced the commission of the act may, as a rule, be shown. Id. at 494, 79 S.W.3d at 287.

*Matthews*, 352 Ark. at 173-74.

O'Neal moved *in limine* to exclude any reference to injury to Ellis's labia minora as lacking in relevance and prejudicial. The State argued that the injury was "very suspicious" and relevant. We also note that in his notice of appeal, O'Neal designated the entire record excluding *voir dire*, opening statements and closing arguments except where an objection was made. Pursuant to Ark. Sup. Ct. R. 3-4(b) (2003), empaneling and swearing of the jury is not transcribed unless requested in the notice of appeal. Pursuant to Ark. Sup. Ct. R. 4-3(h) (2003), this court must review all adverse rulings in a case where the penalty is life imprisonment, and apparently, O'Neal is satisfied with review based on requesting the court reporter to generate only a record of any objections in opening statements and closing arguments. Nothing is transcribed from the opening statements or closing arguments, so we are left to assume there were no adverse rulings to review. The theories of the case put forward by O'Neal and the State must be gleaned from

the testimony. The better approach would be to provide this court with a complete record where penalty of life without parole is imposed.

 Expert testimony must be relevant and not misleading or confusing to the jury. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). In determining the relevance of the testimony, the proponent must show that the evidence is reliable and sufficiently related to the facts of the case to aid the trier of fact in resolving the dispute. *Sera, supra.* In this case, the evidence tended to show that there was an altercation between O'Neal and Ellis corroborating other evidence. Abuse of discretion requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Williams, supra.* Here, even if the trial court erred, we cannot say that the trial court's action in admitting a statement for the purpose of impeachment was improvident, thoughtless or without due consideration. We conclude that the trial court's actions do not require reversal as an abuse of its discretion. *Threadgill, supra.*

### Admission of Photographs

 O'Neal further challenges the admission of other photographs. In *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002), this court stated:

> The admission of photographs is a matter left to the sound discretion of the trial court. *Riggs v. State,* 339 Ark. 111, 3 S.W.3d 305 (1999). When photographs are helpful to explain testimony, they are ordinarily admissible. *Id. (citing Williams v. State,* 322 Ark. 38, 907 S.W.2d 120 (1995)). Further, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. *Weger v. State,* 315 Ark. 555, 869 S.W.2d 688 (1994). Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id.* Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. *Jones v. State,* 340 Ark. 390, 10 S.W.3d 449 (2000). Absent an abuse of discretion, this court will not reverse a trial court for admitting photographs into evidence. *Id.*

*Davis*, 350 Ark. at 35, quoting *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001).

■ O'Neal objected to exhibit 13, the photograph of injury to Ellis's labia. O'Neal argues the trial court erred in failing to make a specific finding in weighing the probative value against the potential prejudicial harm as required by *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003), where this court stated that it "expects the trial court to carefully weigh the probative value of photographs against their prejudicial nature." *Newman*, 353 Ark. at 455. O'Neal objected to exhibit 13 based on relevance and prejudicial harm, arguing that it did not cast light on the elements of the crime. O'Neal also objected at the same time to exhibit 35 which shows the body as it was received from the coroner. O'Neal asserted that neither exhibit 35 nor exhibit 13 made Dr. Kokes's testimony more understandable and should have been excluded based on the potential prejudicial harm. Both objections were overruled without comment by the trial court. O'Neal argues that the trial court failed to make a specific finding in carrying out the prejudicial harm versus probative value test as required in *Newman, supra*. The record does not reveal why the trial court overruled the objections. Further, the record provided does not show that the trial court did or did not weigh the probative value against the potential prejudicial harm. No abuse of discretion in admission of the photographs is shown. Photographs are admissible to show condition of the body. *Newman, supra*. Additionally, given Dr. Kokes was performing an autopsy, condition of the body as received before the autopsy would be relevant to showing what was done and would be helpful in showing the jury what was done in the autopsy.

■ O'Neal also objects to exhibit 12, which showed Ellis's face and neck in the condition when the body was retrieved and to exhibit 14 which showed how the body was attached by the cable to the concrete weight. Both photographs show the condition of the body, and it was not an abuse of discretion to admit them. The evidence of the method of disposal of the body in this case was also relevant because it tended to show that O'Neal was being truthful in admitting he killed Ellis. In the course of his interview with the investigators, O'Neal described how he would "theoretically" dispose of a body, which included methods and

materials actually used in disposing of Ellis's body that were known only to the investigators who retrieved the body. Investigator Jim Dixon testified to this at trial.

*Rule 4-3(h)*

Appellant received a sentence of life imprisonment without parole. Because a life sentence was imposed, the record submitted in this case has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h) for adverse rulings objected to by Appellant but not argued on appeal. No such reversible errors were found.

Affirmed.

BROWN, J., not participating.