Michael B. DANIELS *v.* STATE of Arkansas

CR 07-954                                              285 S.W.3d 205

Supreme Court of Arkansas
Opinion delivered May 29, 2008

*Teri L. Chambers*, Arkansas Public Defender Commission, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Michael B. Daniels appeals from a jury verdict finding him guilty of capital murder and aggravated robbery. Daniels, who had committed two prior serious violent felonies, received a mandatory life sentence for the aggravated-robbery conviction. For the capital-murder conviction, the jury sentenced Daniels to death by lethal injection. We affirm the judgment of conviction for premeditated and deliberated capital murder but reverse and remand for resentencing. We reverse the judgment of conviction for capital-felony murder and aggravated robbery and remand for further proceedings.

On January 8, 2006, Daniels stabbed James Williams at least three times at an Exxon gasoline station and store in Warren. The store's security camera captured a video recording, but not an audio recording, of the attack. At trial, the videotape and witness testimony established the following events. At about 2:30 a.m. on the day of the murder, Williams arrived at the Exxon station. He was a regular customer in the early morning hours. The night before, he had shown Reggie Conner, the store's cashier, a card game, "three-card monty," in which Williams would move three cards, two black and one red, around and ask another person to pick the red card. Conner denied ever having seen Williams play the game for money.

That morning, Daniels came into the store briefly and then left. He returned to the store about half an hour later, at around

6:00 a.m., and began playing cards with Williams. A short time later, Conner heard an argument begin, with Daniels telling Williams, "Yeah, you're going to give me my money back," and Williams replying, "No, I ain't going to give you no money back." According to Conner, Williams also told Daniels that Daniels was not "going to take nothing from [him] unless it's an ass whupping."

Although the store security camera does not provide a view of the area where the men were gambling, it did record the result of this argument. Daniels stepped into the frame, obviously agitated. A moment later, he pulled a very long knife from his clothing and advanced on Williams, causing both Williams and Conner to retreat behind the store's counter followed by Daniels. According to Conner, Daniels repeatedly said, "I want my money." Conner testified that Williams then reached into his pocket, pulled out "some money," and dropped it on the counter. To this, Daniels replied, "I want it all."

Conner then jumped over the counter and paused a moment, apparently reaching for the telephone. According to Conner, he was about to call the police at Williams's request, when Daniels told him, "I wouldn't do that if I were you." Conner left the store and called the police from a borrowed cellular phone. Inside the store, the two men continued struggling, and Daniels eventually forced Williams onto the floor. A further struggle ensued, with Daniels reaching down toward Williams with the knife in his hands and jabbing at him with the knife. The store camera then clearly shows him drawing up and raising the knife over his head before bringing it down and stabbing Williams in the abdomen. The struggle continued, but after the stabbing Williams was able to return to his feet and retreat toward the back of the store. Eventually, Daniels broke off the attack and turned to leave the store. He looked back and gesticulated at Williams, who had begun to follow him.

Daniels left the store and fled on his bicycle after telling Conner, "You didn't see me." Williams also left the store and drove himself to the hospital. Shortly after arriving at the hospital, Williams died of his injuries. Medical testimony established that Williams had three wounds: one to his scalp, one to his chest that was stopped by a bone, and one to his abdomen that passed through the liver and punctured at least two major veins and

arteries. According to the medical examiner, the first and second wounds would not usually be fatal, but it was the third wound that was the most proximate cause of death.

Warren police officers arrived at the Exxon station very shortly after Daniels and Williams left. Conner identified Daniels, whom he and the responding police officers knew by name and appearance, as the perpetrator and pointed to him as he was fleeing on his bicycle. The police officers apprehended him. Two pocket knives were found on Daniels, but the large knife used in the stabbing was not recovered at that time. It was later found hidden in the back seat of the police car where Daniels was placed after his arrest. Laboratory tests later identified blood stains on the knife as belonging to Williams.

Daniels was subsequently charged with both premeditated and deliberated capital murder and capital-felony murder based on aggravated robbery. He was further charged with aggravated robbery.

The jury trial commenced on February 13, 2007, and lasted three days. The State's case essentially consisted of the police officers, Conner, the medical examiner, and the videotape. At the conclusion of the State's case, counsel for Daniels moved for a directed verdict on the aggravated-robbery charge on the basis that all Daniels wanted was his money back and, therefore, there "was no intent to commit theft and aggravated robbery." He further argued that you would have to speculate to find that by saying, "I want it all," Daniels meant more than just his gambling losses. The prosecutor responded that, regardless of whether Daniels was referring to the gambling losses or all of Williams's money, it was not Daniels's property.

The court responded:

> You know, you can't, can't legally gamble in Arkansas, and you can't enforce gambling debts. So whose, whose property was it? It's a fact question. So I'm going to deny the motion, but it may turn out the way Mr. Colvin is arguing. But I think it is a fact question.

Defense counsel also moved for a directed verdict on the premeditated-murder charge and argued that the attack was the result of a card game and there was no premeditation or deliberation. The court denied that motion as well.

Daniels next testified in his own defense. He stated that during his second stop at the Exxon station, he and Williams began playing cards. At first, they did not bet any money, and Daniels won repeatedly. After several rounds, Daniels bet twenty dollars on the outcome of the next game. In his testimony, Daniels claimed that Williams cheated him, which caused Daniels to lose twenty dollars. Daniels's account of the incident that followed was that he drew his knife after seeing something shiny, possibly a knife or a gun, in Williams's hand. Daniels pointed out that he had a cut on his hand after the attack, which was verified by a Warren police officer and by a videotape taken at the police station following Daniels's arrest.

He also admitted to "tussling" with Williams and to being the person shown on the security camera's videotape but claimed that he never told Conner not to telephone the police. He claimed at one point that he could not remember ever stabbing Williams and at another point that he attacked Williams as a reaction to being angry and seeing something shiny. He admitted to having the knife on him when he was arrested but later denied knowing how his knife got in the back of the police car and claimed that someone else must have stabbed Williams with it after Daniels left the Exxon station.

At the end of all the evidence, defense counsel again moved for a directed verdict on the aggravated-robbery charge and argued that Daniels was only trying to recoup money "on a illegal debt." The circuit court ruled:

> Just who this property belonged to at the time, I guess, is a matter for the jury to decide. . . . You may well argue to the jury there wasn't a theft here, and so there can't be a robbery, and, therefore, there can't be a capital murder conviction on this theory. But I think it is a jury question, and I'm going to deny your motion.

The renewed motion for a directed verdict on premeditated and deliberated capital murder was also denied.

The jury found Daniels guilty of aggravated robbery and also found him guilty of capital murder based on two independent grounds: (1) committing a killing during the course of an aggravated robbery under circumstances manifesting extreme indifference to the value of human life and (2) committing a premeditated and deliberated killing. Having been convicted of two or more

serious violent felonies, Daniels was automatically sentenced by the circuit court to life imprisonment for the aggravated robbery.

During the sentencing phase of the trial that followed, additional witnesses testified. In addition to hearing victim-impact statements from Williams's wife and daughter, the jury learned that, on March 22, 2006, Daniels pled guilty to two counts of first-degree battery arising from an incident in which he stabbed two people. While pleading guilty, Daniels explained to the judge, "I was on the porch, got drunk. They got to talking to me. I got angry and I stabbed both of them."

The jury also heard from Daniels's brother, who described the disadvantaged circumstances in Chicago in which they both grew up and Daniels's trouble coping with normal situations and reacting appropriately to perceived threats. The jury further heard conflicting reports from two psychologists who had assessed Daniels's competency. One psychologist, Charles Spellman, who had performed a competency evaluation in 2005 when battery charges were pending against Daniels, testified for the defense that he had diagnosed Daniels as mildly retarded, with an IQ of sixty-four, while another psychologist, Michael Simon, who performed a competency examination in connection with the stabbing of Williams, testified for the State and classified Daniels in the borderline range, with an IQ of 75. Simon also found that Daniels was malingering by trying to present himself as more mentally ill than he actually was.

The jury specifically found that Daniels was not mentally retarded at the time of the offense. The jury also unanimously found the existence of two aggravating circumstances: (1) that Daniels had previously committed another felony involving the use or threat of violence or creating a substantial risk of death or serious physical injury to another person and (2) that Daniels committed the murder for pecuniary gain. As a mitigating factor, all of the jurors found that, since an early age, Daniels probably suffered from a low threshold for provocation and had shown a propensity to overreact to external stimuli. The jury unanimously concluded that the State had proved beyond a reasonable doubt one or more aggravating circumstances, that those circumstances outweighed beyond a reasonable doubt any mitigating circumstances found by any juror, and that the aggravating circumstances justified beyond a reasonable doubt a sentence of death. Daniels was subsequently sentenced by the circuit court accordingly.

## I. Substantial Evidence

Daniels first claims that the circuit court erred in denying his motions for directed verdict as to both capital-felony murder and premeditated and deliberated capital murder. Daniels states that his conviction for capital-felony murder cannot be sustained if there is insufficient proof of his intent to commit an aggravated robbery. In that connection, he argues that, during the attack, he was only trying to retake possession of money he had lost while gambling. He relies on this court's decision in the case of *Davidson v. State*, in which this court held that a person cannot commit robbery by retaking by force money that has been lost gambling. 200 Ark. 495, 139 S.W.2d 409 (1940). In this regard, he asserts that there was no testimony offered to disprove the fact that he was merely attempting to regain money he lost during a card game with Williams.

The State counters that *Davidson* does not apply because the jury was free to discredit Daniels's claim that he was trying to recover gambling losses from Williams. Moreover, the State notes that *Davidson* had to do with a jury instruction, which was not an issue presented in this case. In the alternative, the State argues that *Davidson* should be overruled.

As to premeditation and deliberation, Daniels argues that the undisputed video evidence demonstrates that, when Daniels left the scene, Williams was standing and was mobile. This, he maintains, rebuts the charge that he intended to kill Williams. The State, however, argues that the time that passed between the commencement of the attack and the fatal blow was evidence of premeditation and deliberation, as was Daniels's action in raising the knife far over his head before stabbing Williams. Given the conflicting nature of the evidence, the State argues, the existence of premeditation and deliberation was a question for the jury to decide.

As this court has often said:

> This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered.

*Reese v. State*, 371 Ark. 1, 3, 262 S.W.3d 604, 606 (2007) (citations omitted).

a. Aggravated Robbery.

Turning first to Daniels's motion for a directed verdict on the charge of aggravated robbery, it is clear that, under this court's holding in *Davidson v. State*, Daniels could not be convicted of aggravated robbery if he was trying only to recover money that he had lost by gambling with Williams. 200 Ark. 495, 498-99, 139 S.W.2d 409, 410 (1940). The holding in *Davidson* was based on the fact that, under Arkansas law, a person who loses money gambling may institute a replevin suit to recover that money at any time within ninety days of the loss. *Id.*; *see* Pope's Digest § 6112 (1937); *see also* Ark. Code Ann. § 16-118-103(a)(1) (Repl. 2006) (containing the current codification of the same law, which has not undergone any significant changes).

"Replevin," the *Davidson* court noted, "is a possessory action, and it is essential to its maintenance that the plaintiff should have the right to the present possession of the property sought to be recovered." *Davidson*, 200 Ark. at 498, 139 S.W.2d at 410. Therefore, although a person seeking to forcefully recover gambling losses may be guilty of assault or another crime, he or she cannot be guilty of robbery. *Id.*; *see also* 67 Am. Jur. 2d *Robbery* § 19 (2003) (recognizing the traditional rule that "it is not robbery for one who lost money at gambling to compel by force or threats the return of the money lost"); Jack L. Litwin, Annotation, *Retaking of Money Lost at Gambling as Robbery or Larceny*, 77 A.L.R.3d 1363 (1977) (noting that "generally a charge of robbery or larceny has failed where one who had lost money at gambling compelled by force or threats the return of his gambling losses only"). Although it may be argued that the *Davidson* rule is not in the "public interest in a peaceful and orderly society," Litwin, *supra*, § 2[a], it is nonetheless still good law in Arkansas. Even if this court were to overturn *Davidson*, it would be inappropriate to retroactively apply the change to Daniels.

In presenting the motion for directed verdict to the judge, defense counsel argued that it was clear from witness testimony that Daniels was attempting to do no more than recover his own money, which had been lost gambling, and that the jury would have to resort to speculation to find that Daniels was attempting to take any additional money. The *Davidson* case was not specifically argued to the judge. The circuit court, in both its

rulings, found that the question of whether the gambled money belonged to Daniels or to Williams was one of fact for the jury. In light of *Davidson*, however, this ruling was error, because the law in Arkansas is that recovering gambling losses is not theft.

Nevertheless, while it is true that a person cannot commit a robbery, and therefore cannot commit an aggravated robbery, in retaking gambling losses, it is equally clear that, if a person "under the pretext of taking money that he had lost, take[s] additional money," a robbery has been committed. *Davidson*, 200 Ark. at 500, 139 S.W.2d at 411. In the case at hand, although the prosecutor speculated during closing argument that Daniels may have taken additional money from Williams,[1] he failed to argue to the jury that Daniels committed an aggravated robbery because he took or intended to take more than just his gambling losses from Williams. Instead, in his closing argument following the guilt phase, the prosecutor plainly stated, "His [Daniels's] purpose was to get the money that he had lost." And, again, there was no direct evidence presented that Daniels actually took more than his $20.00 from Williams, and the circuit court limited its rulings following the directed-verdict motions to the gambling losses. In light of the fact that the circuit court erred in denying the motion for directed verdict on aggravated robbery and the fact that the jury was not instructed on Arkansas law as set out in *Davidson* regarding the absence of theft when gambling losses are recouped, we must reverse the judgment of conviction for aggravated robbery and remand for further proceedings.

b. Capital–Felony Murder.

Because the evidence was insufficient to support a conviction for aggravated robbery, it was necessarily insufficient to support a conviction for capital-felony murder with robbery as the underlying felony. Ark. Code Ann. § 5-10-101(a)(1) (Repl. 2006) ("A person commits capital murder if . . . [t]he person commits or attempts to commit . . . [r]obbery . . . and . . . [i]n the course of and in furtherance of the felony . . . the person . . . causes the death of

---

[1] "I find it interesting that on this twenty dollar ($20.00) bet, 'cause Mr. Williams is not here to tell us, but on this twenty dollar ($20.00) bet what he had in his pocket was the one twenty then, then these crinkled up ones and fives [that were found in Daniels's pocket when he was arrested]."

any person under circumstances manifesting extreme indifference to the value of human life."). We reverse the judgment of conviction for capital-felony murder and remand for further proceedings.

c. Premeditated and Deliberated Capital Murder.

We turn then to the second judgment for capital murder based on premeditation and deliberation. For this charge, capital murder can only be sustained if there was sufficient evidence for the jury to find that the killing was committed "[w]ith the premeditated and deliberated purpose of causing the death of another person." Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2006).

This court has said that "[p]remeditated and deliberated murder occurs when it is the killer's conscious object to cause death and he forms that intention before he acts and as a result of a weighing of the consequences of his course of conduct." *Carmichael v. State*, 340 Ark. 598, 602, 12 S.W.3d 225, 228 (2000). Moreover, "[i]n order to prove that an accused acted with a premeditated and deliberated purpose the State must prove: (1) that the accused had the conscious object to cause the death of another; (2) that the accused formed the intention of causing the death before acting; and (3) that the accused weighed in his mind the consequences of a course of conduct, as distinguished from acting suddenly on impulse without the exercise of reasoning power." *Ward v. State*, 298 Ark. 448, 451, 770 S.W.2d 109, 111 (1989); *see O'Neal v. State*, 356 Ark. 674, 682, 158 S.W.3d 175, 180 (2004) ("Deliberation has been defined as weighing in the mind of the consequences of a course of conduct, as distinguished from acting upon a sudden impulse without the exercise of reasoning powers.") (quoting *Ford v. State*, 334 Ark. 385, 389, 976 S.W.2d 915, 917 (1998)).

This court has also held that "[t]he necessary premeditation and deliberation is not required to exist for a particular length of time and may be formed in an instant." *Reese v. State*, 371 Ark. 1, 3, 262 S.W.3d 604, 606 (2007). It is neither necessary nor usually possible to prove intent by direct evidence. *Id.* Instead, "a jury may infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used, the nature, extent, and location of the wounds inflicted, and the conduct of the accused." *Id.*

In the present case, Daniels stabbed Williams three times with a large knife. One of the stab wounds was located in

Williams's chest, and the fatal wound was to his abdomen. Had this been the only evidence before the jury, the "type and character of the weapon used" and the "location of the wounds inflicted" would support a finding of premeditation and deliberation. *Id.* Moreover, as the circuit court noted, the store security camera shows that Daniels paused, drawing his knife over his head, before delivering a significant stabbing blow. The same video further demonstrates that Daniels's attack on Williams did not end at that time. Instead, the two men continued to struggle, with Williams back on his feet within a few seconds of the final stab wound. Despite the fact that Williams was still standing, Daniels broke off the attack, leaving the store aware that Williams was able to walk and was leaving the store behind him.

We are mindful that the California Supreme Court examined a similar situation some years ago in which the appellant shot the deceased after the deceased disregarded the appellant's order not to approach him. *People v. Holt*, 25 Cal. 2d 59, 92, 153 P.2d 21, 38 (1944). After being shot, the victim "stopped, turned, and walked around the train and to the station" at which time the appellant "with eight loaded cartridges remaining in his rifle stopped firing . . . [and] permitted the deceased to proceed to the station without further molestation." *Id.* The court found that these facts, "established beyond question by prosecution witnesses, [were], in the light of all the circumstances shown, overwhelmingly inconsistent with a deliberate, premeditated, and clear intent to take life." *Id.* at 92, 153 P.2d at 39.

Nevertheless, Arkansas's jurisprudence is at odds with the conclusion reached in *People v. Holt, supra*. It is clear to this court that the jury could well have concluded that Daniels intended to cause the death of Williams by inflicting multiple stab wounds. *See O'Neal*, 356 Ark. at 682, 158 S.W.3d at 180; *Ward*, 298 Ark. at 451, 770 S.W.2d at 111. The fact that Daniels saw Williams standing with his hand over his abdomen and did not see him actually die is not determinative. We affirm the judgment of conviction for capital murder based on premeditation and deliberation.

## II. *Mandatory Life Sentence*

Daniels next contends that, by instructing the jury during the sentencing phase that Daniels was to receive an automatic life sentence for his aggravated robbery conviction, the circuit court

strayed from the both the Arkansas Model Jury Instructions and the sentencing procedure outlined by Arkansas statutory law. By so doing, Daniels argues, the circuit court prejudiced the jury in favor of the death penalty. He maintains that, knowing that Daniels was to receive a life sentence for aggravated robbery, the jury was more likely to believe that he should receive a greater sentence for capital murder. He adds that the jury probably thought that if they voted to impose a life sentence for the capital-murder conviction, Daniels would receive no additional punishment for killing Williams.

Because we reverse the aggravated-robbery conviction on other grounds as well as the death sentence and because we do not conclude that this issue is likely to recur on retrial, we do not address it.

The same holds true for Daniels's points concerning the prosecutor's comments during voir dire related to mental retardation, the prosecutor's closing argument during the sentencing phase when he referred to Williams "plead[ing] for his life laying on the floor with his hands together," and the prosecutor's closing argument following the guilt phase when he asked the jury, "What are you as a representative of society going to do about it?" We need not address these arguments as the same circumstances are not likely to recur on retrial.

### III. Rule 4-3(h) and Rule 10(b)

The record has been reviewed, and no reversible error has been found pursuant to Supreme Court Rule 4-3(h).

We have also conducted a mandatory review as required by Rule 10(b) of the Arkansas Rules of Appellate Procedure–Criminal and particularly subsection (vi) which asks "whether the evidence supports the jury's finding of a statutory aggravating circumstance." We conclude that, in one instance, the evidence does not.

The jury found an aggravator, as already mentioned, of murder "for pecuniary gain." We have previously discussed in this opinion that recovering gambling losses does not constitute theft under *Davidson v. State*, 200 Ark. 495, 139 S.W.2d 409 (1940).

Accordingly, because evidence does not exist for an aggravating circumstance based on murder for pecuniary gain as opposed to murder perpetrated in an attempt to recover losses, the

finding of this aggravating circumstance must fail. With the elimination of the pecuniary-gain aggravator, only the aggravator dealing with a previous crime of violence and the mitigator of suffering a low threshold for provocation and a propensity to overreact to external stimuli could be weighed by the jury.

The remaining question, then, is whether the error relating to the pecuniary-gain aggravator is harmless error under Arkansas Code Annotated § 5-4-603(d)(1) (Supp. 2007). We conclude it is not. Under § 5-4-603(d)(1), this court is required to do a harmless-error review under the following circumstances:

> (d)(1)  On an appellate review of a death sentence, the Supreme Court shall conduct a harmless error review of the defendant's death sentence if:

> (A)  The Supreme Court finds that the jury erred in finding the existence of any aggravating circumstance for any reason; and

> (B)  The jury found no mitigating circumstance.

In the instant case, there was clear error in finding the pecuniary-gain aggravator and a mitigating circumstance was found by the jury. Accordingly, a harmless-error review is not mandated.

■ Nor do we conclude that harmless error can apply where, in this case, only one aggravator remains to be weighed against one mitigator. The jury simply did not have the opportunity to engage in that analysis and do the required weighing. For this reason, we hold that the death sentence must be reversed and the case remanded for resentencing.

In response to the dissent, the problems with concluding that the theft in this case was solely a jury question are two fold. First, the jury was not instructed on the law in Arkansas under the *Davidson* case that recovering gambling losses is not theft. Thus, individual jurors could well have convicted Daniels for aggravated robbery and capital-felony murder and found an aggravating circumstance for pecuniary gain solely based on Daniels's recovery of his losses without being apprised of the *Davidson* case.

Second, the prosecutor never specifically argued to the jury that the theft was caused by taking more money from the victim than the gambling losses. He alluded to the money found in

Williams's pocket as shown in Footnote 1 of this opinion, but he never argued that any excess money was the basis for the theft charge. Moreover, the circuit court clearly believed the theft solely involved gambling losses, as witnessed by its rulings on the two motions for a directed verdict quoted in this opinion.

Affirmed in part. Reversed and remanded in part.

GLAZE and GUNTER, JJ., concur in part and dissent in part.

TOM GLAZE, Justice, concurring in part, dissenting in part. While I agree that there was substantial evidence to support appellant Michael Daniels's conviction for premeditated and deliberated capital murder, I disagree with the majority opinion when it concludes that the circuit court erred in allowing the jury to consider the question of whether Daniels was recovering a gambling loss or committing a theft when he stabbed the victim, James Williams. Citing *Davidson v. State*, 200 Ark. 495, 139 S.W.2d 409 (1940), and Ark. Code Ann. § 16-118-103(a)(1) (Repl. 2006),[1] the majority reasons that, under Arkansas law, a person who loses money gambling cannot be found guilty of robbery, even though he or she may use force in the recovery of that money. The logic of *Davidson* is seriously questionable, but this court need not address whether the 1838 law is still the law and public policy in Arkansas.

Here, Daniels's version of what led to the stabbing death of Williams centered on Daniels's claim that he could not have been found guilty of aggravated robbery, because he was merely recovering a gambling loss. One commits aggravated robbery if he "commits robbery as defined in § 5-12-102, and . . . inflicts or attempts to inflict death or serious physical injury upon another person." Ark. Code Ann. § 5-12-103(a)(3) (Repl. 2006). A person

---

[1] This court briefly addressed the background of this statute in *Christian Civic Action Community v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994), writing as follows:

> In 1838, the general assembly made illegal many forms of gambling. Many of the revised statutes of 1838 prohibiting various forms of gambling are brought forward in today's statutes. *See* Ark. Code Ann. §§ 5-66-101 to -119 (Repl. 1993). The public policy against gambling, expressed by the legislature in 1838, was so strong that a losing bettor was authorized to file suit to recover his losses, but a winning bettor was prohibited from filing suit to collect his winnings. That public policy set by the general assembly is still in force. *See* Ark. Code Ann. § 16-118-103(a) & (b)(1) (1987).

*McCuen*, 318 Ark. at 255, 884 S.W.2d at 613.

commits robbery "if, with the purpose of committing a felony or misdemeanor theft . . . , the person employs or threatens to immediately employ physical force upon another person." Ark. Code Ann. § 5-12-102(a) (Repl. 2006). And finally, a person commits theft when he:

> (1) Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of any interest in, the property of another person, with the purpose of depriving the owner thereof; or

> (2) Knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.

Ark. Code Ann. § 5-36-103(a) (Repl. 2006).

Under the felony-murder statute, the State must first prove the felony, so the felony becomes an element of the murder charge. *See Woods v. State*, 363 Ark. 272, 213 S.W.3d 627 (2005) (where jury acquitted defendant of the underlying felony, his capital-felony-murder conviction could not stand); *Meadows v. State*, 360 Ark. 5, 190 S.W.3d 634 (2004). Daniels argues — and the majority apparently agrees — that because the evidence in this case only shows that he was recovering his *own* money, the State could not prove that he committed a theft, which is an element of the aggravated robbery charge.

In adopting Daniels's argument, the majority ignores the evidence before the jury. My problem with the majority opinion is its conclusion that the trial court erred in allowing the jury to consider whether Daniels was, in fact, attempting to recover a gambling debt. The majority states that "[t]he circuit court . . . found that the question of whether the gambled money belonged to Daniels or to Williams was one of fact for the jury." Relying on *Davidson*, the majority states that the circuit court's ruling was error, "because the law in Arkansas is that recovering gambling losses is not theft." However, the court cites no authority that would support a conclusion that the trial court erred in leaving this factual issue for the jury to decide.

Here, there were disputed facts as to whether the money "recovered" by Daniels was a gambling debt. For example, eye-witness Reggie Conner testified that he heard Daniels tell Will-

iams that he "wanted his money back" before the stabbing occurred. However, Conner also testified that, while Williams would frequently play games of "three-card monty" with customers of the convenience store, he did not play the game for money, saying that Williams "didn't offer nobody nor ask nobody you want to play for some money or anything." In addition, although Daniels indicated that he had lost twenty dollars to Williams, Detective Don Hollingsworth of the Warren Police Department testified that he found thirty dollars in cash on Daniels following his arrest. Indeed, the majority of the evidence supporting Daniels's claim that he was trying to take back money that he had lost gambling was Daniels's own testimony, and a jury is not required to believe a defendant's self-serving testimony. *See, e.g., McKenzie v. State*, 362 Ark. 257, 208 S.W.3d 173 (2005); *McDuffy v. State*, 359 Ark. 180, 196 S.W.3d 12 (2004).

Given the controverted state of the evidence regarding the issue of whether Daniels was actually attempting to recover a gambling debt, this was surely a question of fact that the trial court properly submitted to the jury for resolution. *See, e.g., Morgan v. State*, 359 Ark. 168, 195 S.W.3d 889 (2004) (where evidence as presented created a fact question, it was properly decided by the jury); *Raynor v. State*, 343 Ark. 575, 26 S.W.3d 215 (2001) (when evidence presented a question of whether witness participated in murder as accomplice whose testimony would require corroboration, such a question of fact was appropriate for determination by jury). For the majority to conclude, without citation to authority, that the trial court should not have submitted this question to the jury is baffling to me. For the reasons set out above, I dissent.

JIM GUNTER, Justice, concurring in part, dissenting in part. I agree with the majority that the circuit court should have given a jury instruction under *Davidson v. State*, 200 Ark. 495, 139 S.W.2d 409 (1940). However, I write to call attention to the effect of continuing to follow *Davidson*. In *Davidson*, our court held that the recovery of gambling losses by force precludes a finding of guilt to the crime of robbery. Here, Daniels used a knife to recover $20.00 he claims he lost gambling, resulting in the death of James Williams.

While our country prides itself in functioning under the rule of law, *Davidson* undercuts that noble purpose of our judicial system. We even have a statute that allows for the peaceful, civil recovery of gambling losses. *See* Ark. Code Ann. § 16-118-103(a)(1) (Repl. 2006). There is no reason for anyone to resort to

an attack like the one in this case when a civil statutory method of recovery exists. Public policy is hardly served under these facts.

While I concur with the result, I would overrule *Davidson* prospectively.