Bill McENTIRE *v.* STATE of Arkansas

CR 05-75                                                    215 S.W.3d 658

Supreme Court of Arkansas
Opinion delivered October 13, 2005

[Rehearing denied November 17, 2005.]

*J. Blake Hendrix*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Bill McEntire appeals the judgment and commitment order of the Pulaski County Circuit Court convicting him of theft by deception and sentencing him to a term of ten years' imprisonment, with four years suspended. On appeal, Appellant raises a single argument for reversal: whether there is sufficient evidence to support his conviction. As this case involves statutory interpretation, our jurisdiction is proper under Ark. Sup. Ct. R. 1-2(b)(6). We find no error and affirm.

The events leading up to Appellant's conviction occurred, primarily, between February and July 2000. Ms. Clara Ferguson is an eighty-eight-year-old woman, suffering from dementia, who relied on her neighbors, especially Mrs. Bonnie McEntire, Appellant's mother. Specifically, Mrs. McEntire helped Ms. Ferguson with various household needs, as well as with some financial matters. After a car accident in January of 2000, Ms. Ferguson lost her driving privileges and began to rely more heavily on her neighbors. Shortly after, Ms. Janie Woods, one of Ms. Ferguson's daughters, began to consider assisted living for her mother, because she did not feel that her mother could care for herself. Ms. Ferguson, however, did not want to go to a nursing home. In mid-February, Ms. Jo Ann Taube, Ms. Ferguson's other daughter,

received a call from Mrs. McEntire telling her that Ms. Ferguson wanted to go to the bank to take her daughters' names off her bank accounts so that they could not put her in a nursing home. Mrs. McEntire told Ms. Taube that Appellant had offered to take Ms. Ferguson, but also that she had talked Ms. Ferguson out of taking the daughters' names off the accounts.

Nevertheless, on February 14, 2000, Appellant, who only knows Ms. Ferguson through his mother, took Ms. Ferguson to Pulaski Bank and added her as a secondary name on a savings account that he had opened on February 3, 2000. From February through May 2000, deposits into this savings account came from checks made payable to Ms. Ferguson and from savings bonds payable to Ms. Ferguson or one of her daughters. Specifically, the following deposits were made:

- $180.65 check (March 27, 2000)

- $4,000.00 check (March 31, 2000)

- $1,075.87 check (April 5, 2000)

- $10,012.00 savings bonds (April 10, 2000)

- $8,024.00 savings bonds (April 12, 2000)

- $57,682.40 savings bonds (April 18, 2000)

- $13,496.00 savings bonds (May 30, 2000)

These deposits totaled $94,470.92. The account history shows that Ms. Ferguson did not make a single withdrawal; rather, all withdrawals were made by Appellant either as a cash withdrawal or as a transfer to another of Appellant's accounts. There is nothing in the record that indicates Ms. Ferguson authorized these withdrawals, nor is there any evidence that any of the money was used for Ms. Ferguson's benefit. Instead, Appellant retained all funds for his own personal use. On June 26, 2000, Appellant closed the joint savings account and transferred the remaining $14,106.41 into his new, personal savings account. Additionally, on the same day, Ms. Taube began the process of obtaining guardianship of Ms. Ferguson.

The above events were brought to the attention of the Little Rock Police Department after Ms. Taube began to gather her mother's financial documents and other belongings in order to

obtain guardianship of Ms. Ferguson. Specifically, Ms. Taube had sought to gain access to her mother's firebox safe. Because the firebox required a key, Ms. Taube asked her mother for it. Ms. Ferguson replied that she did not know where it was, but that Appellant could always get it open. Ms. Taube contacted Appellant, who came over and got the key for her. On another occasion, Ms. Taube again could not find the key. She contacted Appellant, but to no avail. The key was only located after Ms. Taube's husband lifted the firebox to shake it, to see if anything was left in it, and discovered the key beneath the box. Upon opening the firebox, Ms. Taube became concerned that her mother's savings bonds were no longer in the safe, and she began to look into what had happened to them. Additionally, she noticed that there was taxable income listed on her mother's taxes from bond redemptions and sought to find out where the money had gone. After contacting the bank, Ms. Taube discovered that the money had gone into an account with Appellant's name on it. Ms. Taube officially filed a police report in June 2001.

On August 27, 2002, charges were brought against Appellant on the grounds of theft by deception and obtaining signatures by deception. Appellant appeared before the Pulaski County Circuit Court on October 21, 2004, for a bench trial. At the close of evidence, the lower court ruled that Appellant was guilty of theft by deception. This appeal followed.

Appellant argues that the evidence is insufficient to support his conviction of theft by deception. We have repeatedly held that when a challenge is made to the sufficiency of the evidence on appeal, we will affirm the conviction if there is substantial evidence to support it. *See, e.g., Coggin v. State,* 356 Ark. 424, 156 S.W.3d 712 (2004); *Baughman v. State,* 353 Ark. 1, 110 S.W.3d 740 (2003). In examining the evidence, we view it in the light most favorable to the State and only consider that evidence supporting the verdict. *Id.* Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *O'Neal v. State,* 356 Ark. 674, 158 S.W.3d 175 (2004).

Arkansas Code Annotated § 5-36-103(a)(2) (Repl. 1997) provides:

(a) A person commits theft of property if he:

(2) Knowingly obtains the property of another person, by deception or by threat, with the purpose of depriving the owner thereof.

"Knowingly" is defined in Ark. Code Ann. § 5-2-202(2) (Repl. 1997) as:

A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

Furthermore, "deception" as applicable to this appeal, is defined as "[e]mploying any other scheme to defraud." Ark. Code Ann. § 5-36-101(3)(A)(v) (Repl. 1997).

In order to determine if the evidence is sufficient to support a conviction for theft by deception, it is necessary to examine what it means to employ a "scheme to defraud." Black's Law Dictionary defines "scheme *or* artifice to defraud" as:

For purposes of fraudulent representation statutes, consists of forming [a] plan or devising some trick to perpetrate fraud upon another. . . . Such connotes a plan or pattern of conduct which is intended to or is reasonably calculated to deceive persons of ordinary prudence and comprehension.

*Black's Law Dictionary* 1344 (6th ed. 1990) (citations omitted). Additionally, "defraud" is defined as:

To make a misrepresentation of an existing material fact, knowing it to be false or making it recklessly without regard to whether it is true or false, intending one to rely and under circumstances in which such person does rely to his damage. To practice fraud; to cheat or trick. To deprive a person of property or any interest, estate, or right by fraud, deceit, or artifice.

*Id.* at 423. With these definitions in mind, we now review the issue before us.

█ In the present case, there is sufficient evidence to support Appellant's conviction of theft by deception. Ms. Ferguson was an elderly woman who suffered from mild dementia.

While the evidence indicates that she relied on her neighbors for help with both financial and household affairs, it also reflects that prior to making any major expenditures or financial decisions, Mrs. McEntire, Appellant's mother, obtained Ms. Ferguson's daughter's permission. Appellant, on the other hand, did not consult Ms. Ferguson's daughter prior to making major financial decisions in regards to her money. In February 2000, Appellant added Ms. Ferguson to a savings account he had previously opened. Ms. Ferguson then deposited tens of thousands of dollars in savings bonds and checks into the account. Appellant, not Ms. Ferguson, withdrew money from this account and transferred money into other accounts he controlled solely. There is nothing in the record that indicates Appellant used this money to help Ms. Ferguson. Rather the evidence indicates that he used it for his own personal expenditures. This is sufficient to support a conclusion that Appellant knowingly obtained the property of another.

In regards to the proof of deception, the record contains sufficient evidence to conclude that the money was obtained by a scheme to defraud. Ms. Ferguson kept all of her important financial documents, such as savings bonds and certificates of deposits, in a firebox safe. Ms. Taube testified that her mother had kept the documents in this firebox since she was a child. Ms. Taube further stated that she had visited her mother's house to collect her financial papers to get Ms. Ferguson's taxes done. She explained that she was unable to find the key, and after searching the house, Ms. Ferguson told her that Appellant knows where it is because he can always get in. After Ms. Taube contacted the Appellant, he found the key and gave it to her. Ms. Taube testified that at this time she noticed there were not any savings bonds in the box, as she remembered her mother having while she was growing up.

This was not the only occasion that Ms. Taube could not get into the firebox to help her mother with her finances. On a second occasion, while going through the guardianship process, Ms. Taube could not find the firebox key again. She and her husband called Appellant multiple times asking if he could find the key, but Appellant never came over. Ms. Taube eventually found the key when her husband picked up the box to examine it and found the key beneath it. She explained that she could not pick up the firebox because it was too heavy for her, but that he could. This testimony is substantial enough for the court to make a conclusion that Appellant had a scheme to defraud Ms. Ferguson.

Specifically, if Ms. Taube could not lift the firebox to obtain the key, it is extremely unlikely that Ms. Ferguson could have.

Finally, we agree with the trial court's findings on this issue:

> [T]he telltale evidence in this case is not what's said or not said, but, but the trail that's left in this case. The money that was taken and, and I think maybe washed into his account instead of an account that maybe she controlled by herself, it would make more sense then if that happened. But, it was in his account, and then that money was taken by ATM and other debit cards, and that, that money was taken in the most conspicuous time, and that's when the daughter went to Judge Watt to get some type of protection for his, her mother, and that account was cleaned out, and those, those amounts were from, I think around June twenty-fourth, I can't remember exactly, but June twenty-fourth, just about the time that, that this was being set up until it was depleted before this process was, was completed. And those were funds that were taken from ATM cards, five hundred dollars ($500.00) here, five hundred dollars ($500.00) there, all around. And there's just no question in my mind that that was a scheme to defraud and to hide that money, and to further deplete it.

Upon review of the record and testimony in this case, we conclude that there is more than sufficient evidence to support the trial court's ruling. Accordingly, we affirm the judgment of conviction.