Ricky REESE *v.* STATE of Arkansas

CR 07-112                                                    262 S.W.3d 604

Supreme Court of Arkansas
Opinion delivered September 20, 2007

*William H. Howard*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

Donald L. Corbin, Justice. Appellant Ricky Reese appeals the order of the Chicot County Circuit Court convicting him of capital murder and being a felon in possession of a firearm. On appeal, Reese argues that it was error for the trial court to deny (1) his motion for directed verdict as there was insufficient evidence to prove that he acted with premeditation and deliberation; and (2) his motion to suppress his custodial statement because he was impaired by drug and alcohol use at the time he made the statement. As Reese was sentenced to life imprisonment without the possibility of parole, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

The record reflects that on the evening of July 17, 2005, Reese was with his friend James Matthews Jr. and Matthews's minor son in Matthews's car. After Reese showed Matthews's son a gun he had on him, Reese and Matthews got into an argument, and Matthews ordered Reese to get out of his car. When Reese refused to get out of Matthews's car, Matthews began to take Reese home. During this time, Reese pulled a gun on Matthews, shooting him at least five times, including four times in the head.

After shooting Matthews, Reese fled. He went to the home of Katie Jordan and reported to her that he had shot Matthews and that he had intended to kill him. Reese was arrested later that evening. He was charged with one count of capital murder and one count of being a felon in possession of a firearm. Reese was tried before a jury on June 21-22, 2006, and found guilty on both charges. He was subsequently sentenced to a term of life imprisonment. The instant appeal followed.

As his first point on appeal, Reese argues that the trial court erred in denying his motion for a directed verdict because the State presented insufficient evidence that he acted with premeditation and deliberation. The State argues to the contrary that it presented sufficient evidence of premeditation and deliberation and, thus, it was proper for the trial court to deny Reese's motion and submit the charge of capital murder to the jury. We agree with the State.

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Boyd v. State*, 369 Ark. 259, 253 S.W.3d 456 (2007); *Woolbright v. State*, 357 Ark. 63, 160 S.W.3d 315 (2004). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

Pursuant to Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2006), a person commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." The necessary premeditation and deliberation is not required to exist for a particular length of time and may be formed in an instant. *Boyd*, 369 Ark. 259, 253 S.W.3d 456; *Weston v. State*, 366 Ark. 265, 234 S.W.3d 848(2006). This court has long acknowledged that intent can rarely be proven by direct evidence. *Id.* We have further held that a jury may infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used, the nature, extent, and location of the wounds inflicted, and the conduct of the accused. *Id.*

In the present case, there was testimony from Dr. Dan Konzelmann, an associate medical examiner, regarding the nature and extent of Matthews's injuries. Specifically, Dr. Konzelmann testified that Matthews died of four gunshot wounds to his head. In addition, there was another gunshot wound on Matthews's left lower arm.

Katie Jordan also testified that she knew Reese and Matthews from her time as a substitute teacher at Dermott High School. According to Jordan, Reese showed up at her house on the evening of July 17, 2005, and told her that he had shot Matthews. When Jordan asked if Matthews was dead, Reese replied, "I don't know, but I meant to kill him." Reese then told Jordan that he shot Matthews twice in the head and twice in either the chest or stomach because Matthews was hitting him and would not let him out of the car. According to Jordan, Reese stated at least three times that he "meant" to kill Matthews.

Matthews's mother, Barbara Matthews, testified that Reese and her son grew up together and were best friends. On the evening of the shooting, she went looking for her son and

grandson because it was too late for her grandson to be out. She found them not far from her house and noticed Reese sitting in the back seat of Matthews's car. Barbara asked to take her grandson home, but the boy wanted to stay with his father. He then got into his father's car, at which time Reese showed the child a gun that he had on him. Matthews confronted Reese and told him to get out of the car. When Reese refused to get out of the car, Matthews stated that he would have to "kidnap" him. Barbara told her son to take Reese home and that she and her grandson would follow them. While following Matthews's car, Barbara noticed his brake lights go on and then heard gunshots. She pulled over and as she approached the car, Reese got out and stated that Matthews was dead and that he had shot him. Reese then fled the scene. As he walked away, Barbara noticed the handle of a gun sticking out of Reese's pants pocket.

Clearly, the evidence was sufficient to establish that Reese killed Matthews with premeditation and deliberation. Reese refused to get out of Matthews's vehicle and then as Matthews attempted to drive Reese home, Reese shot him four times, including three shots to the head. As we previously stated, the nature and location of gunshot wounds are evidence that the jury could have relied on to infer that Reese acted with premeditation and deliberation. *See Boyd*, 369 Ark. 259, 253 S.W.3d 456. Moreover, the jury heard direct evidence from Katie Jordan that Reese stated repeatedly that he intended to kill Matthews. Thus, we cannot say that the trial court erred in denying Reese's motion for directed verdict.

As his second point on appeal, Reese argues that the trial court erred in failing to suppress his custodial statement because at the time he made the statement he was impaired by drug and alcohol use. The State counters that a determination of voluntariness of a statement is one for the trial court and in this instance the trial court was in the superior position of observing the witnesses who testified regarding Reese's condition at the time he made the statement, as well as having the benefit of hearing the tape recording of Reese's statement.

We note at the outset that a statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006);

*Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). In order to determine whether a waiver of *Miranda* rights is voluntary, we look to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based on the totality of the circumstances. *Id.*

Moreover, when an appellant claims that his confession was rendered involuntary because of drug or alcohol consumption, the level of his comprehension is a factual matter to be resolved by the circuit court. *Harper v. State*, 359 Ark. 142, 194 S.W.3d 730 (2004). In testing the voluntariness of one who claims intoxication at the time of waiving his rights and making a statement, this court determines whether the individual was of sufficient mental capacity to know what he was saying, in other words capable of realizing the meaning of his statement, and that he was not suffering from any hallucinations or delusions. *Id.*

Here, Captain Marvin Esters of the Dermott Police Department testified that when he was placing Reese under arrest, Reese asked him if it was true that Matthews was dead. At that time, as he read him his *Miranda* rights, Esters noticed that Reese smelled of alcohol. Esters stated that he interviewed Reese a short time later at the police department. That interview began at approximately 1:13 a.m. and concluded at 1:30 a.m. Esters admitted that even though he smelled alcohol on Reese, he did not appear to be overly intoxicated and that he did not believe Reese was unaware of what was going on around him. According to Esters, Reese appeared responsive to his questioning.

Also testifying was Leonard Charles Richardson, Dermott's Chief of Police. Richardson witnessed Esters inform Reese of his *Miranda* rights. According to Richardson, Reese appeared to understand those rights. Richardson also stated that he did not smell alcohol on Reese.

Reese testified that he had been drinking all day leading up to his arrest and that he also had some powder cocaine in his system. Reese testified that he was in no condition to make any kind of statement and that he did not understand his rights, and if he had maybe he would not have said anything.

The trial court concluded that Reese's statement was voluntary and that he waived his rights after being advised of them. Clearly, the trial court's determination in this regard turned on his

evaluation of the credibility of the witnesses. This court has held that the evaluation of the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the trial judge to determine, and this court defers to the position of the trial judge in matters of credibility. *Flanagan*, 368 Ark. 143, 243 S.W.3d 866. Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused, since he or she is the person most interested in the outcome of the proceedings. *Id.* So long as there is no evidence of coercion, a statement made voluntarily may be admissible against the accused. *Id.* Finally, just because Reese may have been intoxicated at the time he gave the statement does not automatically render that statement inadmissible. *See Kennedy v. State*, 255 Ark. 163, 499 S.W.2d 842 (1973).

In addition, the trial judge himself listened to the tape of the interview, and so was able to hear for himself whether or not Reese sounded as if he were impaired. *See Jones v. State*, 344 Ark. 682, 42 S.W.3d 536 (2001). Under the totality of the circumstances, the circuit court did not err in finding that Reese knowingly, voluntarily, and intelligently waived his rights prior to making a statement to police.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions and requests made by either party that were decided adversely to Appellant, and no prejudicial error has been found. *Winston v. State*, 368 Ark. 105, 243 S.W.3d 304 (2006).

Affirmed.