Leslie A. YOUNG *v.* STATE of Arkansas

CR 07-1136                                           281 S.W.3d 255

Supreme Court of Arkansas
Opinion delivered March 20, 2008

*R.T. Starken*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Leslie A. Young, a/k/a Leslie A. Williams, appeals an order of the Sharp County Circuit Court denying her motion to suppress. In *Young v. State*, 370 Ark. 147, 257 S.W.3d 870 (2007), Young's convictions for capital murder, aggravated robbery, and attempted arson were affirmed; however, the case was returned to the circuit court under a limited remand for the circuit court to hold a new hearing on the suppression of Young's in-custody statement. Young now appeals the circuit court's decision denying her motion to suppress on remand.

In reviewing the denial of a motion to suppress a custodial statement, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Reese v. State*, 371 Ark. 1, 262 S.W.3d 604 (2007). When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based on the totality of the circumstances. *Id.* We will reverse the circuit court

only if its decision was clearly against the preponderance of the evidence. *Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005). Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We affirm the circuit court's decision denying the motion to suppress.

At issue is an interrogation of Young by Sharp County Sheriff Dale Weaver. It took place in the Sharp County jail. Both parties agree that Young was advised of her *Miranda* rights by Arkansas State Trooper Jeremy Page prior to the interrogation by Weaver.[1]

Trooper Page took custody of Young earlier that day on January 3, 2006, at about 1:15 p.m. at the county line between Sharp County and Independence County. He had the video recorder in his patrol car running at the time. The video portion of the tape shows only the scenery and passing vehicles; however, the audio portion recorded Page advising Young of her rights. Pursuant to testimony at the suppression hearing, and as confirmed by review of the audio recording on the video tape, Young was advised of her rights, acknowledged that she understood her rights, and, aside from a single complaint about handcuffs, made no further comment then or at any time while being transported by Page.

Elaine Moody testified that she was the "jail matron" at the Sharp County jail who received Young upon her arrival when Page turned Young over to the Sharp County Sheriff's Department. According to Moody, Young spoke to her in order to respond to questions regarding processing into custody; however, there was no discussion related to the crime for which Young was arrested.

After processing Young, Moody called Sheriff Weaver to inform him that it appeared that there might be blood on Young's face and arms. Weaver came to the jail to determine if he should try to take samples from Young's person. Sharp County Sheriff's Deputy Wendy Flynn accompanied him. Weaver concluded there was no blood on Young's face and arms that he could sample. He testified at the suppression hearing about his discussion with Young:

> Well, there were some scratches on her arms and so I wanted to ask her about those scratches and prior to that I wanted to know if she

---

[1] The record reveals that the interrogation by Sheriff Weaver occurred within no more than two hours of being advised of her rights.

had been Mirandized. So I asked her that. I said, Leslie have you been Mirandized? And she said does that mean I've been read my rights. And I said yes that's what it means. And she said yes. And I said well, with that in mind would you want to speak to me about this? And she said yes. And so I asked her about the scratches on her arms.

Weaver then asked Young about where she was on the night of the murder. She answered those questions, and Weaver then told her that she had been seen in the area after the murder and that items from the victim's house had been pawned by her husband. Young then denied any involvement in the murder or other crimes against the victim. According to Weaver, it was then that Young said, "I think I need to talk to a lawyer." Weaver stopped the interrogation at this point. Deputy Flynn also testified and re-counted essentially the same facts about the interrogation.

Young argues that her statement was not voluntary. To be admissible, a "statement must be voluntary 'in the sense that it was the product of a free and deliberate choice rather than intimida-tion, coercion, or deception.' " *Wofford v. State*, 330 Ark. 8, 31, 952 S.W.2d 646, 657-58 (1997) (quoting *Mauppin v. State*, 309 Ark. at 246-47, 831 S.W.2d at 109 (1992) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986))). Further, the statement was given while Young was in custody. An in-custody statement is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Reese, supra.*

Young was advised of her *Miranda* rights, acknowledged that she understood them, and, prior to submitting to interrogation, did not invoke her *Miranda* rights in any manner.[2] Rather, she chose to submit to questioning by law enforcement. In *Scott v. State*, 298 Ark. 214, 217, 766 S.W.2d 428, 430 (1989), this court noted that "[t]he United States Supreme Court discussed waiver of

---

[2] If having been advised of the *Miranda* rights, a criminal defendant "indicates *in any manner,* at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease." *Miranda v. Arizona,* 384 U.S. 436, 473-474 (emphasis in original). This holding in *Miranda, supra,* is reflected in Ark. R. Crim P. 4.5, which provides: "No law enforcement officer shall question an arrested person if the person has indicated in any manner that he does not wish to be questioned, or that he wishes to consult counsel before submitting to any questioning."

the right to counsel in *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389 (1988)," and that "*Patterson* reemphasized the holding in *Miranda* that a proper warning, prior to waiver of rights, is necessary before the police may question an accused." A criminal defendant may waive the *Miranda* rights when he or she is advised of the *Miranda* rights, fails to invoke those rights in any manner, and then proceeds to give inculpatory statements. In *Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992), the defendant was arrested on suspicion of murder and advised of his *Miranda* rights. While being transported to the police station, Ward stated that he had not hurt anybody and repeated an account of his encounter with the victim that he had given prior to his arrest. At the police station, Ward was again advised of his *Miranda* rights. Ward acknowledged that he understood his rights and agreed to talk to the officers on the condition that his statement not be taped. Ward also refused to sign the waiver-of-rights form, and yet made a statement that was then introduced at trial. The statements made after Ward was advised of his *Miranda* rights were admissible because he had been advised of his rights, acknowledged that he understood them, and chose to speak with law enforcement. Similarly in *United States v. Ogden*, 572 F.2d 501 (5th Cir. 1978), the court found that where Ogden was arrested, advised of his *Miranda* rights, indicated that he understood them, and nevertheless chose to speak with law enforcement and give inculpatory statements, those statements were admissible. In *Fleming v. State*, 284 Ark. 307, 681 S.W.2d 390 (1984), the criminal defendant was advised of his rights, made no comment invoking them, and thereafter answered questions. The statements were found to be voluntary and admissible.

Here, Young was advised of her rights, acknowledged that she understood her rights, and then chose to submit to interrogation. Weaver specifically asked her if she had been advised of her rights, and when she answered that she had, Weaver asked if keeping that in mind she wished to speak with him.[3] She responded that she did. It is clear to this court that Young waived her *Miranda* rights by implication. We hold that the circuit court's

---

[3] Deputy Flynn testified that she did not recall Weaver asking Young, whether having her rights in mind she wished to speak with him. The circuit court accepted Weaver's version, and to the extent this calls for a decision on credibility of the witnesses, that was an issue left to the sound discretion of the circuit court. *See Reese v. State*, 371 Ark. 1, 262 S.W.3d 604 (2007).

ruling is not against the preponderance of the evidence and affirm the circuit court's decision that the statement was voluntary and admissible.

Affirmed.