Cameron Duane WILLIAMS *v.* STATE of Arkansas

CR 08-619                                        289 S.W.3d 97

Supreme Court of Arkansas
Opinion delivered November 20, 2008

*James H. Phillips* and *Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

Jᴵᴹ Gᴜɴᴛᴇʀ, Justice. Appellant Cameron Williams was convicted of two counts of capital murder and now appeals his conviction, asserting that the trial court erred in denying his motion for directed verdict because the State failed to sufficiently corroborate his accomplices' testimony. Because this is a criminal appeal in which life imprisonment has been imposed, this court has jurisdiction under Arkansas Supreme Court Rule 1-2(a)(2). We find that appellant's argument is not preserved for our review and affirm.

On the night of June 5, 2006, Sean Johnson and Monte Johnson were shot and killed in Hindman Park in Little Rock. After a ten-month investigation, appellant, Albert Reed, and Nathan Gilcrease were charged, as accomplices, with kidnapping and capital murder, and Latifah Johnson, a friend of appellant's, and Mariah Powell, Reed's then-girlfriend, were charged with hindering apprehension or prosecution.

At appellant's trial, the following pertinent testimony was presented. Mariah Powell testified that on June 5, 2006, she and Latifah Johnson went with the victims to a house on Reck Road, which is where she was living at the time and where she knew Reed was waiting. Powell testified that she knew Reed was going to beat up Monte Johnson, with whom she had a past sexual relationship, due to her continued contact with Monte and an ongoing dispute between Reed and Monte over some stolen property. She testified that when they arrived at the house on Reck Road, she saw Nathan Gilcrease's car parked next door. She testified that she, Sean, and Monte walked into the house and into a back bedroom, where appellant suddenly jumped out of the closet holding a handgun. She testified that Gilcrease then came in the bedroom holding a "chopper," meaning a rifle. She testified that Reed began questioning the victims about his stolen property, and appellant hit Sean in the face with the gun. Powell testified that she had not expected there to be guns there, and she ran from the house because she was scared. She stated that she returned to the house on Reck Road about an hour later to pick up some of her belongings, and she saw blood on the cover of the bed. She testified that, after that night, she overheard appellant talking to his girlfriend on the phone and joking about killing the victims. She testified that appellant told her that if she went to the police, he

would kill her. Powell insisted that she had not set up the victims to be killed and that she thought they were just going to fight.

Colleen Wright, appellant's girlfriend and the mother of his child, testified that about two weeks after the murders, she contacted the police and told them she had information about the killings. She told the police that a girl had set up the victims and that the shooters had taken the victims to Hindman Park. She testified that this statement was not true and that she only said it because she was mad at appellant. Wright testified that she gave another statement to the police on July 12, 2006, in which she named Reed as one of the shooters and told police that Reed had a dispute with one of the victims over his girlfriend, "Red" (one of Powell's street nicknames is "Red"). She testified that she told police that she saw appellant the day after the murders, that he told her that he, Reed, and Gilcrease had beat up the victims and put them in the trunk of Monte Johnson's car, and that he had "merked some dudes in the park." She testified that appellant actually told her that he hadn't done anything in the park, and she was just making up the information that she gave to the police. She testified that appellant had never admitted to taking part in the murders.

Detective J.C. White with the Little Rock Police Department testified about the various statements given by Colleen Wright and also testified about his interview with appellant after appellant's arrest. Appellant's recorded statement was played for the jury. In that statement, appellant said that he, Reed, and Gilcrease had gone to the house on Reck Road on the night of June 5, 2006. He stated that after Mariah Powell arrived with Sean and Monte, Reed began questioning Monte about his stolen property. Appellant stated that Reed began hitting Monte with his hand and that Gilcrease had a gun pointed at Monte. Appellant said he did not want to be a part of what was going on and wanted to go home, so he went outside and got in Gilcrease's vehicle to wait for him. Appellant said that when Reed came out of the house, he had a gun and ordered Sean and Monte into the trunk of Monte's car. Appellant stated that Reed then drove Monte's car to Hindman Park, and he and Gilcrease followed in Gilcrease's vehicle. According to appellant, he stayed in the vehicle while Reed and Gilcrease opened the trunk of Monte's car, shot several times into the trunk, and then asked appellant for some duct tape that was in Gilcrease's vehicle. Appellant said he threw them the duct tape.

Appellant stated that Monte and Sean tried to run away and were shot by Reed and Gilcrease.

Albert Reed testified that he was involved in the murders of Sean and Monte Johnson and that he had pled guilty to two counts of murder in the first degree. He testified that while he was present at Hindman Park at the time of the shooting, it was appellant and Gilcrease who fired the guns. Reed testified that he had intended to confront Monte about his relationship with Powell, but appellant and Gilcrease both had guns and began hitting the victims with the guns. Reed stated that he addressed Gilcrease by name and told him to stop hitting, and Gilcrease became angry and said "they know who I am now" and that he had to kill them now. Reed testified that appellant retrieved some duct tape from another room and that Gilcrease duct-taped the victims while appellant held them at gunpoint. Reed stated that Gilcrease put the victims in the trunk of Monte's car and directed Reed to drive the car to Hindman Park. Once they were at the park, according to Reed, Gilcrease and appellant shot the victims as they tried to run away.

At the close of the State's case, appellant made the following directed verdict motion:

> Okay, Judge, the Defense will move for a directed verdict specifically that — by stating that the State has not — as the State has failed to prove a prima facie case as to the kidnapping allegation, specifically, that has been alleged in the felony information. The State has failed to produce proof which taken in the light most favorable to the State would prove that my client participated in any — any way with the actual kidnapping itself. As a matter of fact, the proof actually showed to the contrary. The Defense would further move that — no, I'll — we'd just ask the case to be dismissed, Your Honor.

The court denied the motion and its renewal at the close of all the evidence. Appellant was found guilty of two counts of capital murder and sentenced to two life sentences without the possibility of parole, to be served concurrently. He then filed a timely appeal to this court.

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *Reese v. State*, 371 Ark. 1, 262 S.W.3d 604 (2007). In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclu-

sion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

On appeal, appellant argues that the State failed to produce sufficient evidence of his participation in the kidnapping, specifically by failing to corroborate the accomplice testimony of Albert Reed and Mariah Powell. But, as illustrated by the quoted motion above, this is not the same argument advanced by appellant at trial. At trial, appellant advanced only the general argument that the State had failed to prove that he participated in the kidnapping and did not raise the issue of accomplice corroboration. We also note that appellant did not request a finding that Reed and Powell were accomplices as a matter or law, nor did he request a jury instruction on the required corroboration of accomplice testimony.

This court has consistently held that a party is bound by the scope of the arguments made at trial, and we will not consider an argument raised for the first time on appeal. *Watson v. State,* 358 Ark. 212, 188 S.W.3d 921 (2004). In addition, Rule 33.1(a) of the Arkansas Rules of Criminal Procedure requires a motion for directed verdict to "state the specific grounds therefor," and this requirement extends to any challenge to the sufficiency of the evidence corroborating an accomplice's testimony. *Gardner v. State,* 364 Ark. 506, 221 S.W.3d 339 (2006). The failure to challenge the sufficiency of accomplice-corroboration evidence in a directed verdict motion precludes appellate review on that ground. *Id.* This is true even in cases where a sentence of life imprisonment is imposed, as it is this court's duty, pursuant to Ark. Sup. Ct. R. 4-3(h), to examine the record for error on objections decided adversely to the appellant, not to address arguments that might have been made. *Tillman v. State,* 364 Ark. 143, 217 S.W.3d 773 (2005).

Pursuant to Arkansas Supreme Court Rule 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Id.*

Affirmed.