2010 Ark. App. 571

**Dawn Dewayne SUGGS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1388.**

Court of Appeals of Arkansas.

Sept. 1, 2010.

S. Butler Bernard, Jr., West Memphis, AR, for appellant.

Dustin McDaniel, Atty. Gen., Christian Harris, Asst. Atty. Gen., Little Rock, AR, for appellee.

WAYMOND M. BROWN, Judge.

Appellant Dawn Suggs was found guilty by a Crittenden County jury of theft by receiving and forgery in the second degree. Suggs was sentenced to consecutive three-year sentences and fined $200. Suggs argues on appeal that the evidence was insufficient to support his convictions, and that the trial court erred by refusing a proffered jury instruction. We affirm.

Evidence at trial showed that Suggs was arrested on June 9, 2009, at Regions Bank in West Memphis. Suggs was a passenger in a vehicle driven by Jarvis Cole. Cole's vehicle pulled up to the drive-thru window located in the middle lane, and a check along with Richard J. Cox's identification was presented to the teller. The teller became suspicious because she personally knew Cox and knew that none of the individuals in the vehicle were Cox. A telephone call was made to Cox's father while the car was still at the bank and the father placed a call to Cox. The bank was informed that no one had Cox's permission to cash a check drawn on his account, and the police were called. After sitting at the window for quite some time, Suggs told Cole to drive off. As they attempted to leave the bank, the car was blocked by police. Cole was removed from the car and placed under arrest. Officers then made contact with Suggs. Before reaching Suggs, Officer D.J. O'Clare saw Suggs place something between the passenger seat and door. When Suggs was removed from the car a Discover card in Cox's name was discovered. Suggs was also placed under arrest. There was a third passenger in the car, Jacob Bass, who was questioned and allowed to leave.

Cox testified that in June 2009, he did not know Suggs, Cole, or Bass, and that he did not authorize any of them to use his debit or credit card. Cox stated that he accidently left his wallet in his father's Ford Ranger on June 8 and called his father so that he could place the wallet in his work truck.[1] Cox said that his driver's

---

1. Cox and his father worked at the same place.

license, Discover card, bank card, and checkbook were in his wallet. According to Cox, he received a phone call from his father on the morning of June 9, and he informed his father that he did not give anyone access to his wallet. Cox also told his father to "go ahead and let the bank know to call the police." Cox testified that he went to the bank and noticed a white Crown Victoria pulling out just as the police were pulling up. He said that Officer O'Clare questioned the occupants of the vehicle. Cox was later shown a check, which he identified as belonging to him. The check |₃was made out for $400. Cox identified his Discover card; however, he never recovered his debit card or his checkbook.

Cox's father, Richard L. Cox, testified that when he received the call from Cox concerning Cox's wallet, he went and placed the wallet in his work truck. He stated that he did not lock the vehicle. He received a call from the bank the following morning and called Cox with his cell phone while still on the phone with the bank. He stated that he asked Cox if he got his wallet out of the truck and when he learned that Cox had not gotten the wallet, he told the "lady at the bank to call the police." He testified that he went to the bank and filled out a report.

Jocelyn Johnson testified that she worked at Regions Bank as a teller. She stated that she was the teller working the drive-thru window on June 9, 2009. According to Johnson, when she received the check, she looked out to speak to Cox and noticed that he was not in the vehicle.[2] She stated that she asked another teller to get Genita Baker so that she could look. Johnson called Cox's father and another worker called the police. Johnson stated

that she stalled the car in the middle lane and the car in the first lane. She said that when Cole tried to pull off, the police stopped him. On cross, Johnson stated that it was the driver who placed the check and driver's license in the tube.

Glenita Baker testified that she worked at Regions Bank as a financial services specialist. According to Baker, Johnson summoned her to the drive-thru window to look at |₄a check and driver's license belonging to Cox. She stated that she looked at the items and looked inside the vehicle and noticed that Cox was not in the vehicle. Baker stated that she called the police. She said that the police blocked the car as it attempted to leave the bank. Baker testified that she gave a written statement to the police.

Cole testified that he did not know Suggs but had seen him just the night before the arrest.[3] According to Cole, he was on his way to summer school when Suggs asked him for a ride "to the bank to cash a check." Cole stated that Bass also wanted to catch a ride that way. Cole said that Suggs told him to go to the Regions Bank by East Broadway. Cole testified that he took Suggs to that particular bank because Suggs promised him gas money. According to Cole, Suggs also told him to drive to the middle lane. Cole stated that Suggs handed him a "check with a card under the check." Cole said that he did not look at the check or the card before he placed it in the "little machine." Cole stated:

We were just sitting there. Dawn said the lady must be new or something because usually she doesn't take this long. I did not think anything about it. He told me to go ahead and leave. Then as

---

2. Johnson said she personally knew Cox because Region's motto is to "know your customers."

3. Cole stated that he did not know Suggs's name until their arrest.

we were fixing to leave, the police pulled up in front of us.

I didn't know what was going on then. Dawn told me to leave. I do not know Richard Cox. I never looked to see how much the check was for. No, I did not look under the check to see what the item was. I just put it in the tube. The police pulled up in front where you exit, they pulled up in front of me and blocked me in. They told me to get out of the car. I did not know what was going on. I didn't know what was going on until they had told me about it. I didn't know [sic] nothing to do with it, I was just giving him a ride to the bank.

On cross, Cole testified that he knew Bass from school. He stated that June 9 was the first time he had ever given Bass or Suggs a ride. Cole said that he and Suggs were charged, but that Bass was not.[4]

Bass testified that he was a passenger in Cole's vehicle on June 9, "when the police showed up at the bank." He stated that he knew both Cole and Suggs before that date; however, he knew Suggs as "Red." Bass stated that he caught a ride with Cole because he wanted to go to Sonic to fill out an application. Bass testified that Suggs gave Cole directions to where he wanted Cole to take him. Bass said that when they pulled up at the drive-thru window at the bank, Suggs passed some material to Cole and Cole placed it in the tube. Bass stated that he could not see what Suggs gave Cole.[5] According to Bass, Suggs told Cole to drive off and Cole did. Bass stated that the police pulled in front of them as they were leaving. Both Cole and Suggs were arrested. Bass was questioned and allowed to leave. On cross,

Bass stated that he had not had any contact with Cole or Suggs since their arrest on June 9, 2009.

Officer O'Clare testified that he responded to a call at Regions Bank on the morning of June 9, 2009. According to Officer O'Clare, someone was trying to pass a forged check at Regions. He stated that as he pulled up to the bank the vehicle was attempting to leave. Officer O'Clare said that as he approached the vehicle, he noticed Suggs "sticking an unknown object between the passenger door and his seat." As he removed Suggs from the vehicle, Officer O'Clare observed a Discover card belonging to Cox. When asked his name, Suggs initially told Officer O'Clare that his name was Tyrone Suggs.

Detective James Turnbow testified that he interviewed Suggs. Detective Turnbow stated that a video was made of the interview.[6] On cross, Det. Turnbow stated that Suggs told him that he did not have anything to do with the check and credit card. Suggs also told him that he did not believe that Bass had anything to do with it either. On redirect, Det. Turnbow said,

I believe Dawn told me that when he noticed the credit card, he just kinda slapped at it or hit at it and it landed on the floorboard by his feet. Right, correct, it was not in his pocket, he just slapped it and it just happened to land over by where he was sitting.

At the conclusion of the evidence, Suggs proffered alternative sentences for both of his charges. Suggs's attorney argued that due to Suggs's age, the fact that no violence was involved in any of Suggs's prior convictions or in the current case, and the fact that Suggs "has been on probation or parole you know since he paroled out and

---

4. At the time of Suggs's trial, Cole still had charges pending.

5. Bass was texting at the time.

6. The video was played in open court.

hasn't been—they haven't revoked his parole, so he can function under that strict supervision of them." The court denied the request:

> I'm going to let you proffer the, for the record the alternate sanctions, but I'm not going to give it to the jury. I'm going to exercise the court discretion based on Mr. Suggs [sic] prior record, prior terms of incarceration in the Arkansas Department of Corrections [sic] and also even if it is given to the jury, it's not binding on the court and the court doesn't have to except [sic] it. For those reasons, I'm going to let you proper [sic] it for the record, give you something to appeal on, if your client is in fact [7]convicted, if he's not, it will be mute [sic] and based on the courts [sic] exercise of discretion I'm not going to read that instruction to the jury.

The case was submitted to the jury, and Suggs was found guilty of the charges. He was sentenced to an aggregate of six years' imprisonment and fined $200. This appeal followed.

We first address Suggs's argument that the trial court erred in denying his motions for directed verdict on the charges of theft by receiving and forgery in the second degree. Although Suggs challenged the denial of his motions in his second point on appeal, double jeopardy concerns require that we review arguments regarding the sufficiency of the evidence first.[7] A challenge to the sufficiency of the evidence asserts that the verdict was not supported by substantial evidence.[8] In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial.[9] Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture.[10] This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered.[11]

A person commits the offense of theft by receiving if he or she receives, retains, or disposes of stolen property of another person knowing that the property was stolen or having [8]good reason to believe the property was stolen.[12] The unexplained possession or control by a person of recently stolen property gives rise to a presumption that the person knows or believes the property is stolen.[13] The offense is a Class C felony if the property is a credit card or credit card account number.[14] A person commits the offense of forgery in the second degree if he or she forges a check.[15] The offense is a Class C felony.[16]

Viewing the evidence in the light most favorable to the State, sufficient evidence supports Suggs's convictions. Officer O'Clare testified that as he was approaching the vehicle, he saw Suggs place something between the passenger seat and the door. Once Suggs was removed from

7. *Boldin v. State,* 373 Ark. 295, 283 S.W.3d 565 (2008).

8. *Sales v. State,* 374 Ark. 222, 289 S.W.3d 423 (2008).

9. *Reese v. State,* 371 Ark. 1, 262 S.W.3d 604 (2007).

10. *Id.*

11. *Id.*

12. Ark.Code Ann. § 5–36–106(a) (Repl.2006).

13. Ark.Code Ann. § 5–36–106(c) (Repl.2006).

14. Ark.Code Ann. § 5–36–106(e)(2)(B)(i) (Repl.2006).

15. Ark.Code Ann. § 5–37–201(c)(1) (Supp. 2009).

16. Ark.Code Ann. § 5–37–201(e) (Supp.2009).

the vehicle, Officer O'Clare discovered a Discover card belonging to Cox in the exact location. The Discover card was among the items in Cox's wallet that had been stolen between June 8 and June 9. Sufficient evidence supports Suggs's conviction of theft by receiving. Sufficient evidence also supports his forgery conviction. Cole testified that Suggs handed him a check along with a card, which he placed in the tube. Bass corroborated Cole's testimony that Suggs handed Cole the items that Cole placed in the tube. Those items were a forged check and Cox's driver's license. Suggs contends that the "only person who says [he] ever possessed the check is the driver. This is the co-defendant who is trying to avoid prosecution. Testimony of only the co-defendant is not sufficient to establish possession by [Suggs]." Suggs is mistaken; Cole's testimony was not the only testimony placing the forged check in his possession. Accordingly, we affirm Suggs's convictions.

Suggs also argues that the trial court erred by refusing to instruct the jury on alternative sentences. Arkansas Code Annotated section 16–97–101(4)[17] authorizes a trial court to instruct the jury on alternative sentences for which the defendant may qualify. Under the statute, the jury may recommend an alternative sentence, but the recommendation is not binding on the trial court. The actual assessment of probation is a matter that lies exclusively within the discretion of the trial court.[18] Suggs cites to *Miller v. State*[19] for his position that the trial court erred by not giving the jury the alternative sentencing instruction. This argument is without merit. *Miller* only requires that the court exercise its discretion in deciding whether to give the instruction based on the facts of each case. Additionally, Ark.Code Ann. § 16–97–101(4) is permissive and does not require a trial court to give an instruction on alternative sentencing.[20] Here, the trial court gave its reason for not offering the instruction to the jury pointing specifically to the facts of Suggs's case. There was no abuse of discretion; therefore, we affirm.

Affirmed.

VAUGHT, C.J., and GRUBER, J., agree.

---

17. (Repl.2006).

18. *Stigger v. State*, 2009 Ark. App. 596, 2009 WL 2958386.

19. 97 Ark. App. 285, 248 S.W.3d 487 (2007).

